### J. H. AND SARAH ANDERSON v. R. B. NEIGHBORS.

#### No. 951. Decided December 10, 1900.

**1. School Land—Defaulting Purchaser—Reinstatement—Statute.**

The Act of 1897 (Batts' Statutes, article 4218f) permitting defaulting purchasers of school land to be reinstated on request by payment of arrears is a remedial statute and to be as liberally construed as its language permits. (Pp. 240, 241.)

**2. Same—Intervening Rights.**

The proviso in such act saving intervening rights of third persons, protected vested rights, and not such as those of an applicant to lease, whose right was by the statute (Batts' Revised Statutes, article 4218r) subject to be rejected by the Commissioner at any time prior to signing his lease. (P. 241.)

**3. School Land—Application for Reinstatement—Application to Lease.**

It was not necessary that the request for reinstatement by a defaulting purchaser should have been accompanied with payment into the treasury of the full amount of interest due by the applicant in order that his right to reinstatement prevail over an already pending application to lease the land. The law admits the construction that the applicant for reinstatement should have a reasonable time to ascertain the amount due and make payment. (P. 241.)

**4. Same.**

A purchaser of school land having made default, another party applied for lease of the land, paying in advance the first year's rent; afterwards the purchaser applied for reinstatement and was proceeding to ascertain and pay the amount in default when the lease contract was executed to the applicant therefor. Held, that the purchaser, paying on its ascertainment the amount in default, acquired a right in the land superior to that of the lessee. (Pp. 239-242.)

QUESTION CERTIFIED from the Court of Civil Appeals for the Fourth District, in an appeal from Pecos County.

*B. C. Thomas, J. R. Sanford,* and *W. C. Douglas,* for appellants.— (1) The Commissioner of the General Land Office has no authority to award and execute a lease on land belonging to the school fund of the State of Texas when such land is in demand for purposes of actual

settlement, and he has the right and it becomes his duty to cancel a lease executed on such land if, before he executes such a lease, he has notice that the land is in demand for purposes of actual settlement. (2) A written application for reinstatement of a forfeited purchase of school land from the State showing on its face that the land in question is in immediate demand for purposes of actual settlement, on file in the General Land Office, is notice, in fact and in law, to the Commissioner, that the land is in immediate demand for the purposes of actual settlement. (3) Notice to a clerk in the General Land Office is notice to the Commissioner. (4) Any "written request," whether by letter or otherwise, showing a desire for the reinstatement of a forfeited purchase, filed in the General Land Office, is all that is required under Revised Statutes, article 4218f. That a lease may not be made when the land is in immediate demand for purposes of settlement. Rev. Stats., art. 4218s. Act of Commissioner is conclusive on question of demand for actual settlement: Brown v. Shiner, 19 S. W. Rep., 686. Right to reinstatement of a forfeited purchase: Rev. Stats., art. 4218f. That actual settlers should be preferred: Crawford v. Wyatt, 55 S. W. Rep., 540. Payment of arrearage into the treasury at time of "written request" for reinstatement not indispensable: Martin v. Brown, 62 Texas, 467; Haney v. Clark, 65 Texas, 93. Notice to a clerk in the General Land Office is notice to the Commissioner and to the State: Insurance Co. v. Ward, 26 S. W. Rep., 763.

The court erred in his third conclusion of law, because under the state of facts shown by the evidence the Commissioner of the General Land Office had no authority to execute the lease to Neighbors, and said lease having been made through a mistake and under a misapprehension of fact, said Land Commissioner had the right and authority, and it became his duty, to cancel said lease and to reinstate the purchase of Sarah Anderson.

The court erred in his fourth conclusion of law, because under the evidence and facts in the case defendants have a valid title to the land in controversy and plaintiff has no title, his lease having been erroneously issued and afterwards properly canceled.

Article 4218s, Revised Statutes, authorizes the Commissioner of the General Land Office "to execute and deliver to the lessee" a lease of school land "if satisfied that the lands applied for are not in immediate demand for the purpose of actual settlement."

The statement from the Court of Civil Appeals shows that "on February 28, 1899, while the application of Neighbors for lease of the land was pending in the Land Office, and before the contract of lease was executed and recorded in Pecos County, Mrs. Anderson wrote to the Land Commissioner applying for reinstatement and informing him that she and her husband had made valuable improvements on the land and were using it as a homestead, and requested him to send amount due in order that she might pay it. This letter was received on March 4th, before the lease was executed." Mrs. Anderson was informed of

the amount of her arrearage and sent it in, but the money was sent after the lease had been made.

From the foregoing it appears that the Commissioner of the General Land Office is not authorized to "execute and deliver to the lessee" a lease when he is "satisfied that the land applied for is (not) in immediate demand for purposes of actual settlement." Appellants contend that the Commissioner was not authorized to execute the lease to Neighbors in the face of Mrs. Anderson's letter for reinstatement, it being direct and positive information to him at the time he executed the lease that the land was "in immediate demand for purposes of actual settlement."

Neighbors could have no greater rights in the land than he had when his lease was executed. As the land department was positively informed at the time the lease was executed that the land was in demand for settlement and being actually occupied as a homestead, Neighbors secured no rights under his lease, because under the circumstances there was no authority in law for its execution.

The Land Commissioner in executing the lease acted under a misapprehension of facts. The issuance of the lease can not be regarded as a decision by the Commissioner that he was "satisfied that the land was not in demand for purposes of actual settlement." The Commissioner was not called upon for a decision nor to exercise a discretion in the matter, with information brought direct to him which must have conclusively "satisfied" him that the land was in demand for settlement as a homestead. In fact the statement shows that the lease to Neighbors was made to him "through the ignorance or mistake of a clerk in the Land Office," and for this reason it was canceled. Roy v. Railway, 72 N. W. Rep., 794, 173 U. S., 587.

The policy of the State favors the homestead seeker. It is clear that the intent of article 4218s, Revised Statutes, is to favor actual settlers, and authorizes the Commissioner to make leases only when he is satisfied that the land is not in demand for settlement. In this case he could not but be satisfied that there was such a demand.

*Walter Gillis*, for appellee.—The land was leased to plaintiff on the 9th day of March, 1899. At that time appellants had no right to a reinstatement of their purchase, because they had not complied with the law requiring them to pay into the treasury the full amount of interest due on their claim up to that date, and after it was leased to plaintiff they clearly had no right to a reinstatement of their purchase, because the rights of a third person (plaintiff) had intervened. Waggoner v. Flack, 21 Texas Civ. App., 449. Appellants had made use of the land for a period of four years and had paid nothing therefor except the first payment of interest of $32, and in all probability would still be using it without any offer or attempt on their part to comply with the contract of purchase or to compensate the State for its use, had the plaintiff or some one else not offered to lease it from the State.

There is still another provision of the law applicable to this case, and which, to our minds, by implication, clearly prohibits the Commissioner from exercising any such power as he attempted to exercise with reference to plaintiff's lease in this case. It is the last clause of article 4218s, Revised Statutes 1895, and reads as follows: "All bids and offers to lease may be rejected by him (the Commissioner) prior to signing the lease contract, for fraud or collusion or other good and sufficient cause."

From these provisions of the law we think it sufficiently appears that the Legislature never intended that the the Commissioner of the General Land Office should set himself up either as a court of law or a court of equity for the adjustment of conflicting claims to the title or possession of the lands of the State previously sold or leased by him to different persons, and that he exceeded his authority in his attempt to destroy the plaintiff's legal rights in this case, in order that he might reinstate defendants' long forfeited purchase.

BROWN, ASSOCIATE JUSTICE.—The Court of Civil Appeals for the Fourth District has certified to this court the following statement and question:

"Appellee instituted this suit in the form of an action in trespass to try title against Mrs. Anderson and her husband, and judgment was rendered in favor of appellee.

"It was in proof that in 1895 Mrs. Anderson, a married woman, applied for and purchased from the Land Commissioner the land in controversy, and made the payment required of her at that time, and gave her written obligation for the balance. In 1898, Mrs. Anderson having made default in payment of interest for 1895, 1896, and 1897, the sale was declared forfeited by the Commissioner of the General Land Office and the land was again appraised and placed upon the market. On February 2, 1899, R. B. Neighbors applied to the Land Office to lease said land at 3 cents per acre and paid in advance for the first year's rent. On the 14th day of February, 1899, the lease was awarded to Neighbors, but the contract was not executed until March 4th, and was recorded in Pecos County, where the land is situated, on March 14, 1899. Mrs. Anderson and her husband have been in possession of the land since her purchase in 1895, and they have made valuable improvements on the land and have occupied it as a homestead up to the time of the trial. On February 28, 1899, while the application of Neighbors for lease of the land was pending in the Land Office, and before the contract of lease was executed and recorded in Pecos County, Mrs. Anderson wrote to the Land Commissioner, applying for reinstatement, and informing him that she and her husband had made valuable improvements on the land and were using it as a homestead, and requesting him to send amount due in order that she might pay it. This letter was received on March 4th, before the lease was executed. The Land Commissioner on May 18, 1899, notified Neighbors that his lease was sus-

pended because it was made under a misapprehension of the facts, the land at the time of the lease being not only in demand for purchase, and actual settlement, but then actually occupied as a homestead by Mrs. Anderson and her husband, and that correspondence was actually going on between the Land Office and Mrs. Anderson at the time of the lease, and the State Treasurer showed that reinstatement of Mrs. Anderson's claim in accordance with advices from the Land Office was actually in progress at the time of award to Neighbors. On June 27, 1899, the Land Commissioner wrote Neighbors, informing him that on the very day that his application to lease the land was filed Mrs. Anderson was making an effort to pay her indebtedness to the State on the land, and that when she was informed of the amount due, she had sent it in, but the money was sent after the lease had been made. The communication to Neighbors showed that the lease had been made to him through the ignorance or mistake of a clerk in the Land Office. On August 12, 1899, the lease of Neighbors was canceled and Mrs. Anderson's purchase reinstated.

"Question: Under the foregoing facts, has Mrs. Anderson lost her right to the land?"

In the year 1897 the Legislature passed an act regulating the sale and lease of the public free school lands, the fifth section of which appears in Batts' digest of the laws as article 4218f, which provides for reinstating forfeited contracts of purchase in the following terms: "In any cases where lands have been forfeited to the State for non-payment of interest, the purchasers or their vendees may have their claims reinstated on their written request, by paying into the treasury the full amount of interest due on such claim up to the date of reinstatement; provided, that no rights of third persons may have intervened. In all such cases, the original obligations and penalties shall thereby become as binding as if no forfeiture had ever occurred." Many persons had forfeited their purchases of the public school lands by the failure to pay interest, and the Legislature, by enacting the foregoing clause of the statute, provided the means by which such persons might be relieved of the consequences of the forfeiture, and the rights both of the State and of such forfeiting purchasers be reinstated as they were before. No formal application was necessary, because the obligation of the purchaser being on file with the officers of the State, it was only necessary for such person to signify his wish to reinstate his contract with the State and to resume his obligation to pay for the land. This was a remedial statute and entitled to be construed so as to give the greatest latitude the language admits of in the consummation of the purposes expressed in the act. Suth. on Stat. Cons., sec. 430; Sedgwick on Stat. Cons., p. 309; Turtle v. Hartwell, 6 T. R., 429; White v. Carpenter, 2 Paige Ch. Rep., 229. In the case of Turtle v. Hartwell, above cited, Lord Kenyon said: "In expounding remedial laws, it is a settled rule of construction to extend the remedy as far as the words will admit." In the case of White v. Carpenter, before cited, the chancellor, in

passing upon a statute concerning trust estates, said: "My judgment must be borne down by the force and weight of authority before I can attach to statute provisions a harsher operation or more unbending severity than to common law principles; or deny to legislative enactments the liberal, benign, and equitable construction which will give to them the attributes of a nursing mother, equally with the rules and principles of the common law." There can be no doubt that Mrs. Anderson comes within the meaning of the law and that her contract was preserved, unless the rights of some third person had so intervened as to debar her of the privilege granted.

The Legislature, by the proviso "that no rights of third persons may have intervened," intended to expressly give the protection which the Constitution afforded to vested rights. Section 17 of the same act of the Legislature of 1897, which appears in Batts' Digest as article 4218r, authorized the leasing of the public school lands under certain circumstances and prescribed rules to govern the Commissioner in making such leases. The last sentence in that article reads thus: "All bids and offers to lease may be rejected by him [the Commissioner] prior to signing the lease contract, for fraud or collusion, or other good and sufficient cause." At the time Mrs. Anderson's request to be allowed to redeem the land was received in the office, the lease had not been signed and delivered by the Commissioner. Under the provision last quoted from the statute, the Commissioner of the General Land Office was invested with the discretion to withhold the lease at any time before signing and delivering the same for any cause which he might deem sufficient, and certainly the notice by Mrs. Anderson and the fact that she was occupying the property as a home would have been ample cause for refusing to sign the lease. It follows, then, that at the time Mrs. Anderson's request was received, Neighbors had not acquired such a vested right as would have entitled him to enforce the lease contract by a proceeding in the court, for which reason it must be held that the rights of a third person had not *intervened* at the time the request was received. But Mrs. Anderson was required to pay into the treasury the full amount of interest due on her claim up to the date of reinstatement, and it is claimed that she should have accompanied her request with the payment of this money in order to acquire a right in preference to the pending bid for a lease. The language of the law is broad enough to admit the construction that the Legislature intended that the Commissioner, upon receiving notice of the desire on the part of the purchaser to reinstate the forfeited contract, should allow to such applicant a reasonable time within which to ascertain the amount due and to make payment to the treasury. It was to the interest of the State to have this contract restored, because, by so doing, it would receive the past due interest which otherwise would be lost to the school fund, and secondly, it would secure an actual settler upon its public school land in conformity to its general policy in selling those lands. A construction which would deny such indulgence to the party wishing

to redeem would be more restricted than the language justifies, and, instead of fulfilling the benign purposes of the Legislature, the existing evil would go unremedied, the hardships would not be relieved against, and the general policy of the State would be reversed. We believe that our interpretation is in harmony with the policy of the State and fully justified by the terms in which the law is expressed.

We answer the question, that Mrs. Anderson's right to the land had not been lost under the circumstances stated in this case, and that the lease contract, executed after the written request made by her, conferred no right upon the lessee.