MOUND OIL COMPANY v. J. J. TERRELL, COMMISSIONER ET AL.

No. 1529.   Decided April 11, 1906.

**1.—School Land—Forfeiture—Notice.**

No law requiring the Commissioner of the General Land Office to notify the original purchasers of school land or their vendees of nonpayment of interest, and that the land was subject to forfeiture therefor; the State can not be estopped from declaring such forfeiture by his failure to do so, though it had been customary in the General Land Office to give such notice as a matter of accommodation to purchasers. (P. 628.)

**2.—Same—Estoppel.**

Parties about to buy school land from a purchaser from the State wrote the Commissioner of the General Land Office for copies of his patents, who replied that the land was not patented, but had been sold under the law as to detached sections, and the purchasers were in good standing. The interest payment was then in default, and the land advertised as subject to forfeiture therefor. Held, that the State was not estopped, as to the parties receiving such answer and buying on the faith of it, from declaring the forfeiture, the answer being correct and the inquiry not calling for information as to the status of, interest payments. (Pp. 628, 629.)

**3.—School Land—Forfeiture—Reinstatement—Intervening Rights.**

A purchaser of school land, or his vendee, when the land has been forfeited for nonpayment of interest, has the right to be reinstated under Revised Statutes, article 4218f, only where rights of third parties have not intervened. (P. 629.)

**4.—Same—Intervening Purchaser.**

Where, between the forfeiture and application for reinstatement, a third party applied to purchase the land, and paid the price, the right so fixed as against the forfeited purchaser claiming reinstatement was not lost by the action of the Treasurer, who, by mistake, returned to the applicant a part of the purchase price, which, on the mistake being discovered, the applicant restored to the Treasurer. (P. 629.)

**5.—Same.**

The right of the forfeited purchaser to reinstatement was not defeated by an intervening application to purchase, where the accompanying obligations for payment were insufficient in amount and were returned to the applicant for correction but not corrected at the time application for reinstatement was made. (P. 629.)

**6.—*School Land—Forfeiture—Owner's Preemption Right—Corporation.***

A corporation is excluded by Revised Statutes, article 4218j, from the preference right reserved to the owner of a forfeited purchase of school land to repurchase within ninety days after the forfeiture. (Pp. 629, 630.)

Vol. XCIX. Supreme—40.

Original application in the Supreme Court for mandamus against the Commissioner of the General Land Office, the adverse claimant of the lands involved being also made a defendant.

*Baker, Botts, Parker & Garwood,* for petition.

*Wm. W. Anderson* and *G. H. Pendarvis,* for respondent Freeland.

*R. V. Davidson,* Attorney-General, and *W. E. Hawkins,* Assistant, for respondent Terrell.

BROWN, Associate Justice.—Relator seeks a mandamus to compel J. J. Terrell, Commissioner of the General Land Office, to reinstate the purchases made by W. D. Hoskins and A. C. Hunter of sections 4, 8, 10 and 12, H. T. & B. Railway Company surveys, located by virtue of certificates Nos. 10-343, 587, 10-341 and 427, respectively, situated in Brazoria County, which land belonged to the public free school fund of Texas, and was sold to the said Hoskins and Hunter, as detached land, on the 26th day of June, 1890. It is alleged that Hoskins and Hunter complied with all the requirements of the law in making the purchase of said land, and that they and those who claim under them paid annually the interest upon their obligations as it accrued until the 1st day of August, 1904, when the interest was not paid; and, on the 1st day of November, 1904, the land was subject to forfeiture for nonpayment of interest. The Commissioner of the Land Office, after the first day of November, 1904, advertised that the land was subject to forfeiture for nonpayment of interest, but the forfeiture was not declared until the 18th day of September, 1905, at which time the land was declared to be forfeited. The relator avers that on the 10th day of July, 1905, it became the purchaser and owner of the said four sections of land by regular chain of transfers from Hoskins and Hunter down to itself. It is also averred that when it was negotiating for the purchase of the said land its attorneys wrote to the Commissioner of the Land Office for copies of the patents for said surveys, to which they received a reply containing this language: "With reference to the H. T. & B. Railway sections in Brazoria County, have to state that they have not been patented. They were sold to Hoskins and Hunter as detached land under the Act of 1887, and the claims are in good standing on the records of this department." It is also averred in the petition that for many years prior to the date when this land was declared to be forfeited it had been the custom of the Commissioner of the Land Office to mail to the purchaser of land, which became subject to forfeiture for failure to pay interest, a written notice of the fact that his land was so subject to be forfeited; but that in this case no notice was sent by the Commissioner to the said Hoskins and Hunter, or to any of the persons who had purchased and were owning the land under them; that relying upon the custom aforesaid and the fact that no notice had been sent to any of the parties, and also upon the report received from the Commissioner of the Land Office that the surveys were in good standing, the relator purchased the said land on July 10, 1905, for a valuable con-

sideration, and the petitioner claims that by reason of these facts the State of Texas is estopped to declare a forfeiture of the land, and therefore, the entry of forfeiture of the land as declared by the Commissioner was ineffective and should be set aside. In connection with the said allegations, the relator states that he has tendered to the Commissioner of the Land Office all interest which accrued upon the said land under the said purchase by Hoskins and Hunter, and was ready and willing to pay the said interest or any other sum which by law became attached to the said purchase in order to reinstate the said purchases; that it made application to the Commissioner of the Land Office to reinstate the said purchases and permit it to pay the interest and perform all the acts required by law of the original purchasers, which the Commissioner refused.

Relator avers that in declaring the forfeiture of the said purchases, the Commissioner of the Land Office entered the following words upon the obligation in each case: "Forfeited for nonpayment of interest. 9-18-05. (Signed) J. T. Robison, Act'g Com'r." Relator says that the said forfeiture is ineffective because the Commissioner did not use the language prescribed by the statute, that is, that he should have entered upon the said obligations the words, "land forfeited," therefore, the said purchases by Hoskins and Hunter have never been in fact or in law forfeited and annulled, but that the Commissioner of the Land Office refuses to recognize them and the rights of relator under them.

Relator alleges that on the 22d day of September, 1905, W. T. Freeland filed in the Land Office his applications to purchase sections 10 and 12 of the said land and bid therefore $4.06 per acre, depositing in the state treasury one-fortieth of the price of each section, but the Commissioner awarded the land to him at $3.50 per acre and the Treasurer returned to Freeland the excess, but subsequently the Commissioner of the Land Office discovered the mistake and corrected the same so as to make the cash payment correspond with the bid made for the purchase of the land and Freeland restored to the Treasurer the sum which had been returned to him.

It is also alleged that on the 25th day of November, 1905, W. T. Freeland's application to purchase sections 4 and 8 of the said land were by mail received in the Land Office but not marked filed until the 27th of that month; that said land was appraised at $6.00 per acre, but the obligation for section 4 was for the sum of $3,716.45, when it should have been for $3,721.35, and the obligation for section 8 was for $2,221.60, when it should have been for $2,223.84; that said obligations were returned by the Acting Commissioner and on the 7th day of December Freeland returned the obligations for the correct sums. On the 23d day of November, 1905, relator notified the Commissioner of the Land Office that it wished to reinstate the purchases of said four sections made by Hoskins and Hunter and, on the 27th day of said month, it presented its formal applications to reinstate said purchases and offered to pay the interest and to submit its evidences of title from Hoskins and Hunter, but the Commissioner refused to receive the transfers or the money to reinstate the said purchases. It is claimed that Freeland did not acquire any right in said lands and, if the forfeitures

were legally declared, relator was entitled to have its contracts of purchase reinstated.

It is claimed that if the forfeitures were properly entered and declared, it, as the owner of the land under Hoskins and Hunter, had a preference right for ninety days from the date of the forfeiture to purchase the said land; and that in the exercise of that right, it presented its applications to purchase the four sections with an obligation for the deferred payments accompanying each application to the Commissioner of the Land Office and deposited one-fortieth of the price of each section in the treasury, complying with all the requirements of the law, which applications were delivered to the Commissioner on the 16th day of December, 1905, but the Commissioner of the Land Office rejected said applications.

Relator alleges that it is a corporation created under the laws of the State of Texas for the purpose of exploring for oil and other minerals in Brazoria County, and in other counties of the State; that for that purpose it purchased the land in question as well as other lands, and that the land was suitable for the purpose of its incorporation. It alleges that it was at the time of the forfeiture of the said land in possession of it as owner and that it supplied itself with all machinery necessary to prosecute the work of exploring the land for oil; that it applied to the Commissioner of the Land Office to purchase the said lands at the price at which they were appraised, but that the Commissioner refused to accept its bid for the reason that the land had been sold to W. T. Freeland. Relator alleges that for the reason before stated, the purchases of said Freeland are void and constitute no impediment to the sale to it of the aforesaid sections of land.

The first attack by relator upon the forfeiture of sections 4, 8, 10 and 12, described in the petition, is that, the State is estopped to declare such forfeiture for a failure to pay interest by the neglect of the Commissioner to notify the original purchasers or any of their vendees, that the interest was not paid and the land subject to forfeiture in accordance with the custom which is alleged to have been established by the Commissioners of the General Land Office by a long course of dealing with such purchasers. There is no statute which prescribes it as a duty of the Commissioner to give such notice, and, although he may have done so as matter of accommodation to purchasers, the State can not be estopped by his failure to comply with this custom so established by the office. Day Company v. The State, 68 Texas, 553; Salem Imp. Co. v. McCourt, 26 Ore., 103; State v. Brewer, 64 Ala., 298.

It is also claimed that the State is estopped to maintain the forfeitures declared in this case by the reply of the Land Commissioner to the inquiry made by the relator's attorneys concerning the four sections of land in controversy. If we grant that the State might be estopped by such an act on part of the Commissioner of the Land Office, nevertheless, the estoppel can not be invoked in this case for the reason that the inquiry made of the Commissioner was not as to the payment of the interest on the contracts, and did not suggest to the Commissioner that the parties inquiring desired information as to whether or not the interest had been paid. The answer of the Commissioner does not

state, nor necessarily mean, that the interest on the obligations of the purchasers had been paid, but was true in the fact that the land had not been forfeited at the time that the answer was made and was therefore in good standing. The Commissioner had no notice that the relator was relying upon his answer to determine the question as to whether the interest was paid or not, and therefore, the answer had no reference to that matter and can not operate as an estoppel in this case.

The Mound Oil Company contends that if the forfeitures were properly entered, still it had the right to reinstate the purchases under the following provision of the Revised 'Statutes: article 4218f. ". . . In any cases where lands have been forfeited to the State for nonpayment of interest the purchasers or their vendees may have their claims reinstated on their written request by paying into the treasury the full amount of interest due on such claims up to the date of the reinstatement; provided, that no rights of third persons may have intervened. In all such cases the original obligations and penalties shall thereby become as binding as if no forfeiture had ever occurred." It is not denied that the Mound Oil Company is a remote vendee by regular chain of transfers from the original purchasers, Hoskins and Hunter, and on the 27th day of November, 1905, it made written application to reinstate the purchases by a full compliance with the law upon that subject and was entitled to reinstate the original purchases unless Freeland had acquired a right which could be enforced and was protected by the Constitution. (Anderson v. Neighbors, 94 Texas, 241.)

Relator contends that the applications made by Freeland to purchase sections 10 and 12, filed on the 22d day of September, 1905, did not constitute an intervening right, because the Commissioner of the Land Office, by a mistake in notifying the treasurer of the amount of cash payment required of Freeland, caused the treasurer to return to Freeland about $17 of the deposit, notwithstanding the mistake was discovered and Freeland restored the $17 to the treasurer within a short time, making the full payment as required by law. This mistake of the officers could not affect the validity of Freeland's application; his right vested at the time the applications with proper obligations were filed and the deposit of the funds made in the treasury; therefore, as to sections 10 and 12 the relator had no right to reinstate the original purchases.

The obligations which Freeland filed with applications to purchase sections 4 and 8 being each for an insufficient amount, Freeland had acquired no legal right in sections 4 and 8 on the 27th day of November, 1905, when relator filed its application to reinstate the original purchases of said sections, and the subsequent filing of proper obligations did not affect relator's right to reinstate the purchases by Hoskins and Hunter, which he exercised by a full compliance with the law. Anderson v. Neighbors, supra.

As to sections 4 and 8 the relator is entitled to have the claims reinstated upon the original obligations.

It is also contended by the relator that if it be admitted that the forfeitures were properly and lawfully made, it had a preference right for ninety days after the said forfeitures were declared to purchase the

said four sections of land under the following provision of the statute: Article 4218j. ". . . . Any owner of land heretofore purchased, which land has been or may be forfeited for nonpayment of interest, shall have ninety days prior right after this chapter goes into effect, or after the land is again placed upon the market, to purchase the said land without the condition of settlement and occupancy, in case it has been occupied for three consecutive years as required by law; but if not, then he shall reside thereon until the occupancy under the first and last purchase shall together amount to the said term of three years; provided, that when any forfeiture has been made, the Commissioner of the General Land Office shall add to the appraised value of such land the amount of interest due thereon at the time of the forfeiture, which shall be paid in cash with the first payment of one-fortieth of the appraised value of the land when purchased under the preference right to purchase given herein." The Mound Oil Company made application for the purchase of this land within ninety days after the forfeiture was declared. The sections of land in dispute were detached lands situated in Brazoria County, which was organized prior to the 1st day of January, 1875. The prior right for ninety days to purchase those lands did not change the legal qualification of the purchaser, which was prescribed in article 4218g in these words: "All surveys and fractions of surveys in all counties organized prior to the 1st day of January, 1875, which surveys are isolated and detached from other public lands, may be sold to any purchaser, except a corporation, without actual settlement, at not less than $1.00 per acre, upon the same terms as other public lands are sold under the provisions of this chapter." The relator being a corporation, and the land being detached, the Commissioner of the General Land Office had no power to sell these sections of land to it at the time of its applications to purchase, therefore, the Mound Oil Company could not exercise the right to purchase any of the lands.

It is ordered that the writ of mandamus issue to J. J. Terrell, Commissioner of the General Land Office, commanding him to permit the Mound Oil Company to reinstate the purchases of Hoskins and Hunter for sections four and eight, described in the petition; but as to sections ten and twelve the writ is denied.

*Writ of mandamus awarded in part and refused in part.*