## W. O. HAMILTON v. F. B. GOULDY.

### Decided May 25, 1907.

**1.—School Land—Application to Purchase—Clerical Mistake.**

Where, in an application to purchase school land and in the obligation for the balance of the purchase money accompanying the application, it appeared from the papers themselves that the amount named in the obligation as the balance of the purchase money to be paid was a clerical mistake, the application to purchase will not be thereby vitiated. Such mistake will correct itself.

**2.—School Land—Withdrawal of Application to Purchase.**

Where an application to purchase school land was lost or mislaid in the Land Office and the applicant, in reply to an enquiry about the same, was told by the Commissioner that no such application was in his office, and the applicant thereupon withdrew the deposit which he had made in the State Treasurer's office and made no effort to assert his rights, such acts will be held to constitute an abandonment of his claim and rights as against a subsequent applicant.

Appeal from the District Court of Deaf Smith County. Tried below before Hon. Ira Webster.

*Veale & Crudgington* and *Theodore Mack*, for appellant.—Under the Act of April 15, 1905, 29 Leg., sections 3 and 4, page 161, it is a condition precedent to an award that the applicant shall accompany his application with an obligation in a sum equal to the deferred payment offered for the land. It is only when the obligation is for the sum due that the power exists in the Commissioner to make an award. In other words, the applicant must bring himself within the terms of the law. Acts 29 Leg., 1905, secs. 3 and 4, p. 161; Mound Oil Company v. Terrell, 99 Texas, 625; Good v. Terrell, 100 Texas, 275; Welhausen v. Terrell, 100 Texas, 150.

*F. P. Powell* and *W. E. Gee*, for appellee.—Appellee's application, affidavit and obligation were on one sheet of paper (a printed form furnished by the Commissioner of the Land Office); and when considered in its entirety, together with the payment to the State Treasurer of $19.85, one-fortieth of the purchase price, it was a substantial if not a literal compliance on the part of appellee with the law, and vested the title to the land in him; and constituting such a contract as the State can sue upon and recover judgment for $774.15 against appellee. Acts 29 Legislature, p. 161, secs. 3, 4 and 8; Joyce v. Sisk, 62 S. W. Rep., 960, Sisk v. Joyce, 68 S. W. Rep., 51.

Application of appellee having reached the Commissioner August 31, 1905, returned, resent and marked filed September 5, 1905, the one-fortieth ($19.85) cash payment to the State Treasurer,

and the appellant's application not being filed for over two months (November 16, 1905), it was the duty of the Commissioner under section 4, of Act of April 15, 1905, to have acted on appellee's application, and upon his failure to act, the law will consider all irregularities waived, imply acceptance, award the land to appellee, and fully estop the State. Acts 29 Legislature, p. 161, sec. 4; Flores v. Terrell, 99 Texas, 575; Hazelwood v. Rogan, 95 Texas, 306; Patterson v. Terrell, 96 Texas, 512.

The error of $674.15 complained of is, at most, only an irregularity that the State may have corrected at the proper time, but does not render the contract void, nor such an error as the appellant can attack. Nobles v. Magnolia Cattle Co., 69 Texas, 434; Weyert v. Terrell, 100 Texas, 409.

The money having been withdrawn by reason of the continual letters of the Commissioner stating that appellee's application had never reached the land office, could not affect appellee's rights, he filing suit February 26, 1906, after the Commissioner's letter of February 15, 1906, informing him of the rejection. Nor could it serve any purpose to have offered the money after rejection. Faucett v. Sheppard, 24 Texas Civ. App., 552; Mound Oil Co. v. Terrell, 99 Texas, 625.

STEPHENS, Associate Justice.—The school land in controversy, a tract of three hundred and ninety-seven acres, situated partly in Deaf Smith County and partly in Oldham County, was awarded to appellant December 6, 1905, on an application to purchase it at $2.25 per acre, dated November 14, 1905, made under section 8 of the Act of 1905 providing for the sale of such lands. The appellee had previously applied to purchase the same land under the same Act at $2.00 per acre, the appraised value, but it seems that the Commissioner of the General Land Office had misplaced his application and entirely overlooked it when he made the award to appellant, and this oversight was not discovered until February 7, 1906, when the obligation accompanying the application, on being inspected by the Commissioner, was found to be defective, in that it specified as the amount thereof $674.15 instead of $774.15 and on this account the application was marked rejected, of which appellee was notified February 15, 1906. In addition to sending his application to the Commissioner of the General Land Office, appellee on September 8, 1905, remitted to the State Treasurer $19.85 as his cash payment, which was one-fortieth of the purchase price. When the application, which was dated August 29, 1905, was first sent to the Land Office it was returned by the Commissioner, August 31, 1905, because the envelope in which it had been enclosed bore no indorsement, with the suggestion that it might be placed in another envelope properly indorsed, which was promptly done, but when it reached the Land Office the second time it seems to have been misplaced in the chief clerk's desk and lost sight of, as above stated. December 7, 1905, appellee seems to have written the Commissioner in reference to his application to purchase the land in controversy, to which on December 11, 1905, the Commissioner replied that he did not find any such application in his

office, but on the contrary found that appellant had already purchased the land in controversy. On December 14, 1905, appellee wrote to the Commissioner requesting a return of the $19.85 in the hands of the Treasurer, in response to which on December 16, 1905, the Commissioner informed the Treasurer that he was in receipt of a letter from appellee stating that he had made application to purchase the land in controversy, but that on examination of the records of his office he could not find any such application, and directed him, if he had any money on deposit under such application, to return the same to appellee "as per his request," and accordingly on January 12, 1906, the Treasurer returned the money to appellee. On the 19th of December, 1905, appellee seems to have written another letter to the Commissioner of the Land Office in reference to his application to purchase the land in controversy, to which on December 22, 1905, the Commissioner replied advising him that the land had been sold to appellant on his application filed in the Land Office November 16, 1905, and hence that the land was no longer subject to sale. Appellee made no effort to substitute the lost papers or to return the cash payment to the Treasurer, but seems to have accepted the situation until after the Commissioner had found and rejected his application, when, on February 26, 1906, this suit was instituted to recover the land and resulted in a judgment in his favor, from which this appeal is prosecuted.

*Conclusions.*—It was evidently due to a mistake of the draughtsman that the amount specified in the obligation was one hundred dollars less than the amount which appellee was required and intended to obligate himself to pay. In his application, in the light of which the obligation should be read, he proposed to purchase the three hundred and ninety-seven acres of land at two dollars per acre, one-fortieth cash, and in the obligation, after promising to pay the sum of $674.15 with interest, he recites that the same was for the balance of purchase in accordance with section 8 of the land Act approved April 15, 1905, describing the land. The obligation contained the further recital that he was to pay the annual interest of five percent upon all unpaid principal, together with one-fortieth of the original principal, and to comply strictly with all the conditions, limitations and requirements contained in said Act. In addition to what thus appears on the face of the papers, which would seem to warrant us in treating the error as a clerical one, which corrects itself, appellee made positive proof that the erroneous amount had been inserted by mistake. The case of Joyce v. Sisk, 62 S. W. Rep., 960, and 68 S. W. Rep., 51, is cited as authority for holding this to be a substantial compliance with the statute providing for the sale of school lands. Appellant, however, cites the case of Mound Oil Co. v. Terrell, 99 Texas, 625, as authority to the contrary. But we do not find it necessary to reconcile these rulings, since we have come to the conclusion that appellee had no such right to the land when thus it was brought as to warrant the recovery had. When informed by the Commissioner that he had no application on file in the Land Office, and that the land had

been awarded to another, appellee was put to his election as to whether he would proceed on the assumption that he was entitled to be treated as a purchaser and take steps to enforce that right, or whether he would accept the suggestion of the Commissioner that he had lost his opportunity to become a purchaser and was only entitled to a return of the cash payment then in the hands of the State Treasurer. That he chose the latter alternative is placed beyond controversy by the evidence. It matters not that it may have been the fault of the Commissioner that he made an unwise choice. The Commissioner was not the State and there is no estoppel involved. It is one thing to make a fatal mistake for which a public officer may be to blame, and quite another to take steps necessary to acquire a valuable statutory right. When appellee wrote the Land Commissioner requesting a return of the cash payment, he in effect withdrew the application which he had sent to the Land Office, but which had never been accepted or otherwise acted on by the Commissioner. While the Commissioner could not have deprived him of the land by misplacing, neglecting or refusing to consider his application, appellee nevertheless had the power to withdraw it with the consent of the Commissioner before it was acted on, and this, we think, he virtually did when he requested a return of the cash payment. No other reasonable interpretation could be placed upon this voluntary conduct on his part, however unwise it may have been and however much the Commissioner may have been at fault in misplacing the application and advising him that he was not entitled to the land. The judgment is therefore reversed and here rendered denying appellee recovery.

*Reversed and rendered.*

Writ of error refused.