# United Production Corporation et al v. Everett Hughes.

No. 7556. Decided April 30, 1941.
Rehearing overruled June 11, 1941.
(152 S. W., 2d Series, 327.)

*Carney & Carney,* of Atlanta, *Watkins & Mays,* of Dallas, *Felts, Wheeler & Wheeler,* of Austin, *Lasseter, Simpson, Spruiell & Lowry,* of Tyler, *Abney & Abney,* of Marshall, *Vinson, Elkins, Weems & Francis,* and *Thomas Fletcher,* all of Houston, for plaintiff in error.

It was error for the court to hold that the fractually allegation of plaintiff's petition set forth the essential elements of a cause of action against these plaintiffs in error independent of the asserted right of the Land Commissioner and that the trial court's order of dismissal was improper. Ball v. Hagy, 54 S. W. 915; Pecos & N. T. Ry. Co. v. Rayzor, 106 Texas 544, 172 S.W. 1103; Linn v. Scott, 3 Texas 67.

*W. E. Fitzgerald* and *Ralph P. Dickson,* both of Wichita Falls, for defendant in error.

The trial court abused his discretion in refusing to permit plaintiff to amend his petition, when he offered to dismiss as to the Land Commissioner, over whom the court had no jurisdiction, but did have a cause of action against the other defendants in the suit. Johnson v. Dallas Cooperage & Warehouse Co., 120 Texas 27, 34 S. W. (2d) 845; City of Dallas v. Springer, 8 S. W. 772; Camp v. Gulf Production Co., 122 Texas 383, 61 S. W. (2d) 773.

*Williams & Williams,* of Austin, filed brief as amicus curiae.

MR. JUDGE SLATTON delivered the opinion of the Commission of Appeals, Section B.

Hughes brought this action against the Land Commissioner and others in the district court of Travis County, for the purpose of procuring a mineral lease upon alleged vacant land situated in Cass County, Texas.

The Attorney General, on behalf of the Land Commissioner, filed a plea to the jurisdiction under the provisions of Vernon's Annotated Civil Statutes of 1925, Article 1735, and other parties filed similar pleas and pleas of privilege, and other parties filed formal answers.

Hughes filed a motion to dismiss as to the Commissioner and asked permission to amend as to all other parties. No action was taken upon the motion by the trial court. The judgment from which Hughes has appealed provides as follows:

"On this 15th day of October, 1937, came on to be heard said cause, etc. * * * whereupon came relator and announced to the Court that the plea to the jurisdiction filed by the Attorney General of the State of Texas on behalf of the respondent Land Commissioner was good and should be sustained, but that in view of such plea * * * relator desired to dismiss as to Commissioner * * * and further stated to the Court that he desired leave of the Court to file an amended pleading; and, further, in open court stated that some of the respondents, (naming them) had filed plea of privilege and pleas to the venue to Cass County, Texas, which pleas to the venue relator confessed in open court to be good.

"Whereupon, came on to be heard the pleas to jurisdiction filed by respondents in said cause, and the court having heard such pleas and being of the opinion that such pleas to the jurisdiction are good and should be sustained, and that the sustaining of such pleas require dismissal of the cause;

"It is accordingly ordered, etc., (here dismisses land commissioner).

"It is further ordered that the several pleas to the jurisdiction filed by respondents be, and the same are, hereby in all things sustained, and this cause is herewith dismissed.

"It is further ordered that said cause having been dismissed, the application of the Relator for leave to amend be, and the same is, hereby denied."

The Honorable Court of Civil Appeals at Austin reversed the judgment of the trial court and remanded the cause with instructions to change the venue to Cass County. 122 S. W. (2d) 366. This court granted writ of error.

Plaintiffs in error contend that the Honorable Court of Civil Appeals erred in holding that the fractual allegations of defendant in error's petition set forth the essential elements of a cause of action against plaintiffs in error alone and independently of the asserted rights against the Land Commissioner, so that the order of dismissal by the trial court and denying amendment was held to be improper.

That the primary purpose of the suit was to compel the Land Commissioner to execute a mineral lease upon the land

in suit cannot well be questioned. Omitting the fractual averments made against the Land Commissioner, the defendant in error alleged the following:

"Relator would further represent and show unto the Court that the respondents, save and except the Commissioner of the General Land Office, have gone upon the land and premises hereinabove described, without legal authority and have taken possession of the same and are appropriating said land to their own use and benefit; that they have leased and drilled for oil and gas minerals and are appropriating the rents and revenues from said property to their own use and benefit and have taken and are now taking from said land and premises the minerals thereon and thereunder, and have produced and sold and appropriated to their own use and benefit the oil and gas in great quantities from said premises to the great damage of your Relator and the Public Free School Fund of the State of Texas, and they are now taking from said land and premises said oil, oil products and minerals and appropriating the same to their own use and benefit without any right so to do, and are therefore trespassing, and will continue to trespass upon said land, premises to the damage of your Relator and the State of Texas, and its school fund in the sum of Fifty Thousand ($50,-000.00) Dollars. In this connection, Relator would ask that said respondents be required to file in this court, a true and correct statement and accounting of the oil and mineral products that they have taken from said land and be required to account to this Relator and the Public Free School Fund of this State for the same.

"Wherefore, your Relator prays that each of the said respondents be cited to appear and answer this petition, and that upon a hearing of this cause, he have judgment compelling and requiring the Commissioner of the General Land Office to grant him a mineral lease on the acreage described herein in accordance with the provisions of this Act, and in all respects, to approve said application and execute the character of lease required under the Act aforesaid, to your Relator; that the other respondents herein be cited to show why said Writ of Mandamus herein prayed for should not be issued, and that said respondents be required and compelled to file in this court an accounting of the oil and gas products that they have taken from the land and premises herein described; and that your Relator recover all costs in this behalf expended."

1 It is apparent that the factual allegations quoted do not

present a cause of action in favor of Hughes against the parties other than the Land Commissioner. It appears from the specific prayer quoted above that the main relief sought is against the Land Commissioner and as against all other parties other than the Land Commissioner an accounting is sought, but without any prayer for a recovery of any sum of money or property and that relief is secondary and dependent upon the issuance of the mandamus. The predominant purpose of the suit being to compel the Land Commissioner to execute a mineral lease upon the land, the accounting feature of the action was a mere incident to the main purpose of the suit and dependent upon the issuance of the mandamus. Therefore, when Hughes conceded the jurisdictional plea asserted by the Land Commissioner on the ground that the Supreme Court has exclusive jurisdiction in such a case, and asked the trial court to dismiss the proceedings as to the Land Commissioner, there was no cause or controversy pending which Hughes had the right to amend. In other words, there was nothing to amend.

2   In the case of Pecos & N. T. Ry. Co. v. Rayzor, 106 Texas 544, 172 S. W. 1103, Mr. Justice Phillips, speaking for the Supreme Court, said:

"Nothing is better settled than that, in a suit which the Court is inherently without the power to hear and determine, any judgment rendered and all proceedings had in its relation are mere nullities. Under this fundamental rule, with the court destitute of all authority to give to the suit any cognizance, it is difficult to conceive that the filing of the petition could have any legal effect. To constitute the proceeding a 'suit' or 'action,' in any legal sense, it is essential that it rest in a court, with the power to hear it. Without such a forum it is not 'a suit,' since it lacks that which is as necessary to make it a suit as the petition itself."

3   Applying the rule stated to the pleading filed by Hughes, it cannot be said that any injury was sustained by him when the trial court refused to allow an amendment to be filed. This is true for the reason that it affirmatively appears from the pleadings of Hughes that the cause of action attempted to be brought is not within the jurisdiction of the district court, but within the exclusive jurisdiction of the Supreme Court. Article 1735, Vernon's Annotated Civil Statutes of Texas, 1925. The rule is recognized that one cause of action may, by amendment, be substituted for another. Ballard v. Carmichael, 83 Texas 355, 18 S. W. 734. But this rule presupposes jurisdiction in the court in which the causes of action have been filed and can-

not be applied in an action such as this because the district court does not have jurisdiction to entertain it.

It is true that Hughes has complied with all necessary steps to obtain a lease upon school land, according to his averments, provided the land is vacant and belongs to the public free school fund of the State of Texas. It is alleged that the land is vacant. It is also alleged that the Land Commissioner denied Hughes' application to lease for the reason, according to "information and belief" entertained by Hughes, that plaintiffs in error made some sort of claims to the land. Thus the allegations stated simply mean, when we apply the presumption that a public official has rightly performed his duty, (Anderson v. Polk, 117 Texas 73, 297 S. W. 219) that the land is vacant according to the conclusion or opinion of Hughes and that the land is not vacant according to the conclusion or opinion of the Land Commissioner. The statutes under which Hughes asserts his rights give to the Land Commissioner the authority to determine whether the land covered by the application is vacant and belongs to the State. McCamey v. Aiken et al., 118 S. W. (2d) 482; Short v. W. T. Carter & Bro., 126 S. W. (2d) 953. In the determination of the matter, the Land Commissioner acts for and on behalf of the State. It is apparent, therefore, that when the Land Commissioner refuses an application such as the one filed by Hughes, under the presumption that the land covered by the application does not belong to the school fund because not vacant, the rights asserted under compliance with the statutes like those asserted by Hughes must be a controversy with the State. This is obvious when we consider that if Hughes is correct in the assertion of a vacancy, the State of Texas, on behalf of the school fund, will be enriched to the extent of the value of the land involved. In 38 Tex. Jur., Sec. 36, p. 857, it is said:

"* * * suits against state officers are suits against the State where the State is the real party against which relief is sought, and where a judgment against the officers could operate to control the action of the State * * *. Thus a suit against a state officer to establish the validity of a state contract is a suit against the State, * * *."

Hughes' action in compliance with the statutes, according to his averments, amounts to a bona fide offer to enter into a lease with the State of Texas through the Land Commissioner with regard to vacant land belonging to the school fund. The statute authorized the Land Commissioner to determine whether

the land was vacant and if found to be vacant, to issue a statutory lease with the applicant, but the Land Commissioner having determined against the vacancy, refused to lease. Therefore, it seems clear to us that the State is a necessary and indispensable party to any proceedings which Hughes has a right to prosecute in virtue of his having complied with the statutory provisions amounting to an offer to purchase an oil and gas lease upon the land involved. The legislative act under which Hughes claims compliance made no provision for the claimant to bring suit against the State or anyone else in the event the Land Commissioner determined that no vacancy existed. The Legislature evidently considered that an officer such as the Land Commissioner, with all information as contained in the Land Office with regard to titles and surveys of the land in this State, could well determine vacancies vel non with due consideration to the applicant and other claimants when presented with an application like the one filed by Hughes. The legislature evidently knew that in the event the Commissioner of the Land Office decided prior granted land to be vacant, the prior grantees of the State have the right to litigate their titles with the subsequent grantees of the State. The Legislature also knew that in the event the Attorney General of the State was dissatisfied with the decision of the Land Commissioner in deciding against vacancies, the Attorney General had the right and was enjoined by law to bring a suit to establish a vacancy. The failure of the act to provide a method or to authorize the applicant whose application had been refused by the Land Commissioner to institute a suit to enforce his compliance with the statute indicates to our minds that it was not the intention of the Legislature to place the burden of litigation upon claimants of land when the Land Commisisoner had decided on application that the land was not vacant. It must be kept in mind that in virtue of Article 1735, Vernon's Annotated Civil Statutes of Texas, authorizing suit against a state officer such as the Land Commissioner to be filed in the Supreme Court and under the decisions of the Supreme Court it has been many times decided that mandamus will only issue against the Land Commissioner when the duty sought to be performed is ministerial as distinguished from discretionary, and then only upon a record which shows by undisputed facts that the ministerial duty should be so performed by the state officer.

It was contended by Hughes in the Court of Civil Appeals, and the same contention is made here, that a compliance with the statute under which Hughes filed his application for a

lease entitles him to sue plaintiffs in error in the district court to determine whether the land involved is vacant and belongs to the public free school fund of Texas. A consideration of the legislative history of the various land acts, we think, will show the contention to be untenable. The act of February 23, 1900, General Laws, First Called Session, pp. 29-35, Sec. 8, provided:

"When any of the lands described in this act, or any of the other public lands of the State held or owned by any fund, or any lands in which this State, or any such funds have an interest are held, occupied or claimed by any person or association or corporation, adversely to the State, or to such fund, it shall be the duty of the Attorney-General to institute suit therefor, together for rent thereon, for any damages thereto, and for the purpose of any such suits for such lands, or affecting· the title thereto or right growing out of the same, the venue thereof is fixed in Travis county, Texas, concurrently with the county of defendant's residence, and the courts of said county shall have the same jurisdiction over the defendant and the subject matter of the same as if such defendant resided, and such property was situated in said county."

On April 15, 1901, at a regular session of the Legislature, p. 253, there was passed an amendment of the·act of 1900. Under the above act and the amendment the Supreme Court of this State, in the case of Juencke v. Terrell, 98 Texas 237, held that:

" 'When any of the land described in this act, or any of the other public lands of the State held or owned by any fund, or any land in which this State or any such funds have an interest, are held, occupied or claimed by any person or association or corporation, adversely to the State, or to such fund, it shall be the duty of the Attorney-General to institute suit therefor,' etc. From this we think it is to be inferred that the policy of the Legislature in reference to lands which were claimed by third parties was first to establish its title before putting them upon the market for sale; and it was not intended that they should be sold until the controversy between the State and claimants had been adjudicated."

Thus it is manifest that the only authority given to file suit to determine a vacancy was in the Attorney General of Texas. The law was again amended by the Acts of 1905 and 1907. See Vernon's Sayles Texas Statutes, p. 3598. The law was again changed by the Act of 1919 and became known

as Article 5323, which for the first time made provision for the determination of a question of vacancy as against the adverse claims of third parties. Cockrell v. Work, 122 Texas 406, 61 S. W. (2d) 787. The case of Van Camp v. Gulf Production Co., 122 Texas 383, 61 S. W. (2d) 773, was brought under the above statute.

The enactment of Article 5323 under which the Van Camp suit was brought is at least persuasive that the Legislature recognized that such authority did not theretofore exist. The repeal of the 1919 act, i. e., Article 5323 above mentioned, by the Act of 1931, evidences a recognition by the Legislature that it did not consider it to be in the public interest to allow the titles of lands claimed to belong to the Stae or any fund of the State to be litigated except through its representative, the Attorney General. The recent enactment of the Legislature (1939) seems to permit one whose application has been rejected to file suit, but the State is required to intervene. This of course can have no bearing upon the present inquiry, but it is significant that the act under which Hughes claims his rights was enacted in 1931, and that the case of Cockrell v. Work was decided in 1933; still the Legislature took no action to authorize the institution of a suit by a claimant such as Hughes, whose application had been refused by the Land Commissioner, to litigate his rights either with the State or with adverse claimants other than the State.

Hughes relies upon the case of Thomson v. Locke, 66 Txeas 383, 1 S. W. 112. This was a suit by a locator of a certificate upon land believed to be unappropriated against the surveyor to compel the making of a survey and against another claiming the land under title from the State, which was alleged:

" * * * to be null and void because the field notes and the certificates under and by virtue of which they were made were returned to the General Land Office of Texas after they were barred by the statute of limitations."

The duties of a county surveyor or a district surveyor have been generally statutory. Adverse claimants were permitted to be joined in such a suit in order to determine the superiority of the claims asserted. The issue tendered in the case was the superiority of rights asserted by holders of valid land certificates upon locations made or attempted to be made on admittedly public land. The State's title to the land was not involved and could not become involved under the facts pleaded.

The State could not acquire any rights nor lose any rights, regardless of the outcome of the litigation. Therefore the ruling made in that case cannot control the present case for, as we have seen, under the facts pleaded by Hughes the State's title to the land must be litigated and successfully maintained before Hughes can be said to be entitled to an oil and gas lease thereon. The case of Fristoe v. Blum et al., 92 Texas 76, 45 S. W. 998, was a contest between purchasers of school land in which rival claimants were claiming grants from the State through the Land Commissioner. Like the Thomson case, supra, the State's title was not involved. The public free school fund could neither be enriched nor impoverished by the outcome of the suit. The case of Maddox Bros. & Anderson v. Fenner et al., 79 Texas 279, 15 S. W. 237, was a suit for mandamus against the county surveyor of Bee County and others to compel a survey of alleged unappropriated public doman and thereby subject to location and survey as such. Like the Thomson case, supra, the title of the State in that proceeding was not in issue.

The case of Anderson et ux v. Neighbors, 94 Texas 236, 59 S. W. 543, was a contest between a purchaser of public land whose purchase contract had been forfeited by the Land Commissioner and an applicant to lease, which lease had been inadvertently granted by the Land Commissioner during the time in which the purchaser was attempting to reinstate her purchase contract. This Court held that the leasee:

" * * had not acquired such a vested right as would have entitled him to enforce the lease contract by a proceeding in the court, for which reason it must be held that the rights of a third person had not *intervened* at the time (the purchaser sought to reinstate her purchase contract) the request was received."

The issue in the case was not one of vacancy but of priority of right to admittedly public domain to which the State had lost title by contract with the purchaser.

The case of Nations v. Miller, 107 Texas 616, 183 S. W. 153, was a contest between purchasers of school land which was awarded to one purchaser June 26, 1906 and thereafter forfeited and subsequently awarded June 10, 1909, to another. The issue in the case was the validity of the wards made by the Land Commissioner and did not involve a vacancy nor the State's title to the land.

The case of Caples v. Cole, 129 Texas 370, 102 S. W. (2d) 173, 104 S. W. (2d) 3, cited by the Court of Civil Appeals, was a contest between a patentee and an applicant to purchase or lease 39.5 acres of admittedly public free school land. The issue in the case was the superiority of the rights asserted by the applicant to purchase or lease and the patentee of the State. The State's title was not litigated because it was admitted by both parties to the suit.

The case of Wintermann v. McDonald, Land Commissioner, 129 Texas 275, 102 S. W. (2d) 167, 104 S. W. (2d) 4, cited by the Court of Civil Appeals, was a mandamus suit brought in the Supreme Court against the Land Commissioner to compel an award and patent to 9.4 acres of land admittedly vacant and belonging to the school fund. The State's title to the land was admitted and therefore was not an issue in the proceedings. The only issue in the case was whether the applicant was entitled to the minerals less one-sixteenth as free royalty, etc., or was entitled to the fee, with a reservation of all the minerals under the land to belong to the State. If such a proceeding be deemed a suit against the State, Article 1735, Revised Civil Statutes of 1925, authorizes the same. The holdings made in the case have no relation to the questions presented in the present suit.

All of the cases cited by the Court of Civil Appeals and Hughes, including the other cases above discussed, may be classified as follows: (1) suits involving a contest of priority of right to receive a patent or permit upon admittedly vacant land; (2) suits involving contests between claimants to ownership of a patent or permit approved or issued upon admittedly vacant land; (3) suits to enforce statutory right to have survey made and field notes returned to the Land Office in order to complete an application to purchase; (4) authorized statutory proceedings, such as those authorized by Article 5323, Revised Civil Statutes of 1925, now repealed. The suit which Hughes seeks to bring in the district court belongs to the fourth class and, as we have stated, the statutory authority therefor is now nonexistent.

It affirmatively appears from the sworn allegations made by Hughes that any proceedings which he may be able to bring involves the State's title to the land and that the State's title cannot be litigated by him without legislative authority. Hughes being unable to allege statutory authority to bring the suit,

there was no error committed by the trial court in the refusal to allow an amendment.

It follows, therefore, that the judgment of the Court of Civil Appeals which reversed the judgment of the district court must be reversed and the judgment of the district court affirmed.

Opinion adopted by the Supreme Court April 30, 1941.

Rehearing overruled June 11, 1941.