## VAN CAMP ET AL. v. GULF PRODUCTION COMPANY ET AL.

No. 5872.   Decided May 13, 1933.
(61 S. W., 2d Series, 773.)

384

*John W. Pope* and *W. A. Hudson,* of Dallas, and *C. B. Collard,* of Fort Worth, for plaintiffs in error.

The iron pipe corner at the N. W. corner of Survey 1, Block B-24, and the Brass Collar corner at the N. W. corner of Survey 6, Block B-25, and the undisputed North lines thereof are the only known corners and lines in those blocks of certain location, and in the year 1927 the surveyor, R. E. Estes, the original surveyor in the field of Blocks B-24 and B-25, actually surveyed on the ground from those corners and lines the South lines of those blocks according to course and distance calls contained in their surveys from the certain North lines and corners from North to South, and as so located each and every survey in Blocks B-24 and B-25 receives its full complement of acres, leaves perfectly intact the configuration of those Blocks and manifests the mistake of the surveyor, W. D. Twitchell, writing the field notes and calling for adjoinder in supposing that the south lines of those blocks reached and coincided with the North lines of Blocks 30 and 31, University Lands. Post v. State, 169 S. W., 401 and 407; Brooks v. Slaughter, 218 S. W., 632, and 232 S. W., 856; Standefer v. Vaughn, 219 S. W., 484; State v. Talkington, 274 S. W., 314-316; Garcia v. State, 274 S. W., 319; Kerr v. State, 274 S. W., 474; Love v. Jones, 138 S. W., 1128; Layton v. N. W. & T. Land Co., 29 S. W., 1120; Gilbert v. Harris, 109 S. W., 392; Holdsworth v. Gates, 229 S. W., 585; Findlay v. State, 238 S. W., 956; Prairie Oil & Gas v. State, 229 S. W., 585 (Fly, 1921); Lomax v. Rowe, 3 S. W. (2d) 498; Williams v. Winslow, 84 Texas, 377, 19 S. W., 513; Gerald v. Freeman, 68 Texas, 201, 4 S. W., 256; Duff v. Moore, 68 Texas, 270, 4 S. W., 530; Davidson v. Kellen, 68 Texas, 406, 4 S. W., 561; Robertson v. Mooney, 21 S. W., 143.

All calls for adjoinder with unmarked and unknown lines of another survey, made apparently on conjecture or by mistake, must give way to course and distance calls from known and certain corners, which were sufficient in themselves to lo-

cate such blocks, and this is true whether it be an actual or office survey. Kerr v. State, 205 S. W., 44; Huff v. Crawford, 89 Texas, 214, 34 S. W., 606; Hamilton v. State, 152 S. W., 1117; Ry. Co. v. Thompson, 65 Texas, 192; Sellman v. Sellman, 73 S. W., 48; Booth v. Upshur, 26 Texas, 64; Bennett v. Latham, 45 S. W., 934.

The Constitution (Art. 5, Sec. 8) providing that the district court shall have "such other jurisdiction original and appellate, as may be provided by law," the legislature had authority in 1919 to confer on such courts such duties and authority as it saw fit, administrative and ministerial, as well as strictly judicial, and there being no constitutional inhibition, the legislature has authority to provide any means it sees fit to ascertain vacancies and provide for the sale of lands belonging to the Public Free School Fund and the right and duty of the legislature being to provide all means of ascertaining vacant lands belonging to the Public School Fund, it can clothe any official or court with power to ascertain such vacancies; and that is all that is attempted in enacting Article 5323 and the trial court did not err in overruling appellants' first special exception to Plaintiff's First Amended Original Petition. Lomax v. Rowe, 3 S. W. (2d) 498; Anderson v. Polk, 297 S. W., 219; Maxey v. Boyles, 258 S. W., 229; Smith v. Turner, 13 S. W. (2d) 152; York v. Alley, 25 S. W. (2d) 193; Cockrell v. Work, 17 S. W. (2d) 174; Articles 454, 5921 and 5932, 5928 and 6013; Sec. 1, Art. II and Sec. 8, Art. V, Constitution; G. H. & S. A. Ry. Co. v. State, 81 Texas, 802; Schendell v. Rogan, 94 Texas, 597.

*John E. Green, Jr.,* of Houston, *P. O. Settle* and *David W. Stephens, Wm. L. Wise, Burney Braly* and *Hiner & Pannill,* all of Fort Worth, and *A. M. Gee,* of Edmond, Okla., for defendants in error.

Since the field notes for the South tier of sections in Public School Blocks B-24 and B-25 call for the North lines of University Blocks 30 and 31, which University lines can be definitely ascertained by running course and distance from monuments established on the ground, recognized by appellee, and there being no evidence as to how the surveys of Public School Blocks B-24 and B-25 were actually made, the North lines of University Blocks 30 and 31, should be given the dignity of artificial objects and calls for such lines should prevail over course and distance of 1969 varas called for in the field notes of the South tier of sections in Public School Blocks B-24 and B-25, and the Trial Court erred in rendering judgment that a

vacancy exists between Public School Blocks B-24 and B-25 and University Blocks 30 and 31 to the South of such Public School Blocks. Standefer v. Vaughn, 219 S. W., 484; Maddox Brothers & Anderson v. Fenner, 79 Texas, 291; Smith v. Turner, 13 S. W. (2d) 152; Baker v. Light, 80 Texas, 627 Anderson v. Stamps, 19 Texas, 460; Stafford v. King, 30 Texas, 257; Freeman v. Mahoney, 57 Texas, 621; Fordtran v. Ellis, 58 Texas, 245; McAninch v. Freeman, 69 Texas, 445; Wyatt v. Foster & Raffety, 79 Texas, 413; Cross v. Wilkinson, 111 Texas, 311.

Article 5323, R. S., 1925, is unconstitutional and void under Section 1, Article 2, of the Constitution of Texas, since it undertakes to impose upon the District Court non-judicial duties, and therefore, the Court erred in overruling appellant's first Special Exception to plaintiff's First Amended Original Petition. Anderson v. Polk, 297 S. W., 219; In re House Bill No. 537, 113 Texas, 367; Muskrat v. United States, 219 U. S., 346, 55 Law Ed., 246; Ex parte Towles, 48 Texas, 413; Cockrell v. Work, 17 S. W. (2d) 174.

A suit under Article 5323 asserts a cause of action residing not in the nominal plaintiff named therein but a cause of action residing solely in the State of Texas and permits such nominal party to frame the issues, choose his own counsel, and conduct the litigation thereunder and thus denies the right of the county and district attorneys and attorney general the duty of representing the State as committed to them under Section 22, Article 4, and Section 21, Article 5 of the Constitution of Texas.

This duty the Legislature cannot devolve upon others, nor can it interfere with the officers named in their right to exercise them. Staples v. State, 112 Texas, 61, 245 S. W., 639; Brady v. Brooks, 99 Texas, 366; Harris County v. Stewart, 91 Texas, 133; State v. I. & G. N. Ry. Company, 89 Texas, 562.

The plaintiff in a suit brought under Article 5323 is not an applicant to purchase vacant unsurveyed public school land. Such plaintiff has no right to file an application for the purchase of such land until after the suit has been finally determined, and, therefore, has no such justiciable right as would entitle him to maintain a mandamus to compel a survey and to show that the area was vacant.

It is perfectly clear in this case that but for the provisions of article 5323 plaintiff could not maintain this suit. The land, as shown by the records in the General Land Office, was not vacant land, and, therefore, the Commissioner was without power to sell it until it had been recovered in a suit brought

by the Attorney General. Juencke v. Terrell, 98 Texas, 237; Fitzgerald v. Robinson, 110 Texas, 468; Southern Pine Lumber Company v. Consolidated Lumber Company, 217 Federal, 719; Mackay v. Robison, 291 S. W., 1102; Yarborough v. DeMartin, 67 S. W., 177; Hickey v. Collyns, 90 S. W., 716; Anderson v. Polk, 297 S. W., 219; Cross v. Wilkinson (Sup.), 234 S. W., 68; Goldman v. Hadley, 122 S. W., 282; Kirby Lumber Company v. Gibbs, 14 S. W. (2d) 1013; San Antonio v. Strumberg, 70 Texas, 366, 7 S. W., 754.

*Cantey, Hanger & McMahon, Mark McMahon, C. W. True-heart,* and *Gillis A. Johnson,* all of Fort Worth, as amici curiae.

Plaintiff, as an applicant to purchase and have surveyed vacant unsurveyed public school land by complying with requirements of Article 5323, has a justiciable right to maintain mandamus to compel survey and show that the area is vacant. Greene v. Robison, 117 Texas, 516; Anderson v. Robison, 267 S. W., 456; Murphy v. Terrell, 100 S. W., 130.

The constitution does not specifically provide that the Attorney General shall bring this character of suit. State v. International & G. N. R. R. Co., 89 Texas, 562; State v. Moore, 57 Texas, 309; State v. Waller, 211 S. W., 322.

MR. JUDGE CRITZ of the Commission of Appeals delivered the opinion for the court.

This suit was brought under the provisions of Article 5323, R. C. S. of Texas, 1925. At the threshold of the case we are met with a contention by defendants in error that the act or statute in question is unconstitutional and void. We must therefore first determine that contention, as a holding that the statute is invalid would necessarily result in dismissing this whole proceeding.

The act in question, Art. 5323, is as follows:

"The rules governing the sale of unsurveyed school lands are:

"1. Application.—One desiring to purchase any portion of the unsurveyed land believed to belong to the school fund shall make a written application of inquiry to the Commissioner. The inquiry shall give the applicant's post office address, state in effect that he desires to buy the land if it is for sale and sufficiently designate it. If it appears from the records of the Land Office that the area belongs to the public free school fund, or if there be doubt as to the existence of the area as public free school land, the applicant shall be advised and given the

name and address of an authorized surveyor with whom he may contract for the survey of the land at the expense of the applicant. The applicant shall file an application with the surveyor accompanied by one dollar as a filing fee. The application shall be filed and recorded and sufficiently describe the land. The survey shall be made and returned to the Land Office within ninety days after the date of the Commissioners' advice as to an available authorized surveyor.

"2. Suit to require survey—If the Commissioner declines to recognize the existence of the area as public school land and refuses to authorize a survey to be made, such person may file suit against the county surveyor in the district court of the county in which the land is located, or in the county to which such county may be attached for judicial purposes, to compel him to make the survey and thereupon the surveyor shall implead the claimant of the land and in such proceedings determine if the area be public land. In such proceedings the surveyor shall not be held for any cost incurred. If the final judgment of the court should decree the area or part thereof to be school land the surveyor shall make the survey, and the application, field notes and one dollar filing fee shall be filed in the Land Office within ninety days from the date of the final decree.

"3. Classification—When the surveyor returns the field notes and a plat of the survey to the Land Office, together with one dollar filing fee to be paid by applicant, he shall report under oath the classification and reasonable market value of the land and also the timber thereon and its value, which may be considered in connection with such other evidence as may be required by the Commissioner in determining the price to be given for the land and timber. If upon inspection of the papers the Commissioner is satisfied from the report of the surveyor and the records of the Land Office that the land belongs to the public free school fund and the survey has been made according to law, he shall approve the same by classifying and valuing the land, and mail notice of such action to the applicant, giving the classification, price and terms.

"4. Terms of sale.—Any timber on such land shall be sold for cash at its reasonable market value. No award shall be issued for the land until the timber shall have been fully paid for. The applicant shall file in the Land Office his application for the purchase of the land together with one-fortieth of the appraised value fixed thereon within sixty days from the date of the notice of the classification and valuation, together with the applicant's obligation for the balance of the unpaid purchase

price bearing interest at the rate of five per cent per annum, and the obligation and other conditions of sale shall be the same as that for surveyed land. If such application should not be filed within the time prescribed herein, the Commissioner shall place the land on the market for sale upon the same terms as are herein provided for other surveyed school land. If upon the inspection of any application, field notes and records of the Land Office, there should appear to be a greater area belonging to the school fund than that included in the application, and field notes, the Commissioner may, in his discretion, require the applicant to include the whole area in his field notes. If it appears that another than the applicant claims an unsurveyed area which belongs to the school fund, the Commissioner may, in his discretion, refer the removal of such claim to the Attorney General before making a sale to an applicant. The Commissioner may sell the area though the Attorney General refused to institute proceedings for the removal of such claim." (Acts 1907, p. 490; Acts 1919, p. 315).

An examination of the original act found at page 315, Acts Regular Session 36th Legislature 1919, discloses that the original act is substantially the same as the codification, except the original act is not divided into sections, while the codification is divided into four sections.

The constitutionality of the Act is attacked by the defendants in error on several grounds. These grounds are in substance as follows:

(1) Because the cause of action asserted by the party claiming the vacancy is not a cause of action or right claimed or asserted by such person, but is a cause of action which is alleged to reside in the State, and, is in effect a suit for the State.

(2) Because a suit under Article 5323, asserts a cause of action residing in the State, and not in the plaintiff named in the action, and permits the party named as a plaintiff to frame the issues, choose his own counsel, and conduct the litigation thereunder, and thus denies the county and district attorneys and the Attorney General the right and duty of representing the State, as committed to them under Section 22, Art. IV, and Sec. 21, Art. V of the Texas Constitution.

(3) Because the right of a private person to maintain a suit in which a cause of action is being asserted in favor of the State, or the public generally, does not exist at common law in Texas, and it has never been held that a private person has the

right to bring suit unless such private person has a vested right in the cause of action asserted.

(4) Because the plaintiff in a suit brought under Art. 5323 is not an applicant to purchase vacant unsurveyed school land in that such plaintiff has no right to file an application for the purchase of such land until after suit has been finally determined, and, therefore, has no such justiciable right as would entitle him to maintain a mandamus to compel a survey, and show that the area was vacant.

(5) Because Art. 5323 attempts to confer on the Land Commissioner the power to review a judgment of the district court.

(6) Because the judgment rendered under Art. 5323 is not binding on the State, and, therefore denies the defendant in such suit the due process of law which is guaranteed to him under Sec. 19, Art. I of our State Constitution and under Sec. I of the 14th Amendment to the Constitution of the United States.

We shall dispose of these contentions by specific and general discussion of the constitutional provisions involved, and an interpretation of the act.

■■ In our opinion the Act is not subject to any of the constitutional objections urged. Under Sec. 4 of Art. VII of our State Constitution the Legislature is given general supervision and control of the sale of the public school lands. The power and duty to supervise and control the sale of the public school lands of the State carries with it by necessary implication the right to provide means whereby the amount of land owned by the State may be judicially ascertained and determined, so long as the means provided are not in contravention of any constitutional provision. We think that when the act is properly construed it does nothing more, and nothing less, than provide a perfectly constitutional and convenient method by which it may be judicially determined whether a given tract of land is vacant public school land. We think further that the clause *"and in such proceedings determine if the area be public land,"* means that *in such proceeding it shall be determined if the area belongs to the State.* In other words the express provision of the statute giving the Court the power to determine whether a vacancy exists necessarily means that the Court is given the power to determine whether the State or the impleaded claimant is the owner of the land.

■■ An examination of the act shows that it provides in substance that one desiring to purchase any portion of the unsur-

veyed public school land shall make application or inquiry to the Commissioner, etc. If the Commissioner declines to recognize the vacancy then the applicant is given the right to file suit against the county surveyor in the district court of the county where the land is located, or to which such county is attached for judicial purposes. The statute then makes full provision for making all persons claiming any interest in the land parties to the suit. If the suit results in the land being adjudged to be vacant the necessary result is to adjudge that the land belongs to the State, and the State must therefore necessarily get the benefit of the litigation. Futhermore, if the land is adjudged to be vacant it would be the absolute duty of the surveyor to make the survey, and on the filing of his report with the Commissioner, it becomes the absolute duty of the Commission to allow the applicant to complete his purchase on compliance with the terms of the statute. Thus it is conclusively shown that the State must abide the result of the judgment if the land is adjudged vacant. On the other hand, should the land be determined not vacant the result would be to adjudge that it does not belong to the State. It follows that the State must abide the judgment in either event. We are further of the opinion that we should hold this judgment binding upon the State for the reason that we should not ascribe to the Legislature an intent to enact a law which would provide for a judicial ascertainment of a public school land vacancy binding on all the World, and the State if the vacancy is established, but not binding on the State if the land be adjudged not vacant; and especially should this construction be rejected when it would render the constitutionality of the act doubtful.

■ A careful reading of the statute conclusively shows that it is susceptible of but two constructions with reference to its purpose and intent either of which leads to the conclusion that it is binding on the State, and therefore not invalid because not binding on the State. The two constructions are:

(a) That it was the purpose and intent of the Legislature to constitute the applicant, who himself has an equitable interest in the land, though no legal title thereto, and whose interest is substantially identical with the interest of the State, the agent of the State to institute the suit on his own behalf, and on behalf of the State, for the purpose of determining the issue as to whether the land is vacant public school land. When the suit has been instituted against the surveyor, who is a sworn public official, it is made his duty to implead all adverse claimants. Also, under the general rules of practice and pro-

cedure in force in this State, any person who claims any interest in the land, but who is not impleaded by the surveyor, can intervene or be impleaded or joined as in ordinary civil cases. It is thus seen that all parties are before the court for the purpose, expressly declared by the statute, of having a judicial determination as to whether the area is vacant public land, that is whether the land belongs to the State or to some other party to the suit.

(b)   That it was the purpose of the Legislature to permit the State to be sued by constituting· the Surveyor, who is a sworn public official, the agent of the State on whom citation is to be served. It thus appears that the applicant, who himself has an equitable interest in the land though no legal title thereto, institutes the suit against the State by service of citation on the Surveyor. It is then made the duty of the Surveyor to implead all adverse claimants. Also under this theory, any person not impleaded by the surveyor can intervene or be joined or impleaded as in ordinary civil suits. Under this theory all parties, including the State, are before the court just as in (a) above for the purpose expressly declared by the statute of determining whether the land belongs to the State as a part of its public school domain, or to some other party to the suit.

We do not consider it necessary for us to determine which of the above constructions expresses the legislative ·intent for the reason that, as above shown, both lead to· the same result.

◼ It is contended by the defendants in error that the act is unconstitutional and void in that it attempts to provide a method for adjudicating the State's title to its public land, but excludes the Attorney General, and county and district attorneys from the right to represent the State, in contravention of Sec. 22, Art. IV, and Sec. 21, Art. V, of our State Constitution. In this connection it is pointed out that Sec. 22 of Art. IV, provides that the Attorney General shall represent the State in all cases before the Supreme Court and ‚shall perform all duties which may be required of him by law, and that Sec. 21 of Art. V makes provision for the State to be represented in the district and inferior courts by the county and district attorneys.

In connection with the above it is contended that under the provisions of the act the State's title to its public land is put in jeopardy in a judicial proceeding instituted by a private individual represented by counsel of his choosing, and that the State is compelled to submit to· its right being litigated and

determined without having the benefit of the services of its Attorney General and other counsel provided by law. We think the act is not subject to such criticism.

The rule is well established in this State that where the language of a statute is of doubtful meaning, reasonably susceptible of different constructions, one of which will render the act constitutional and valid, and the other will render it unconstitutional and void, the construction which upholds the constitutionality and validity of the act will be adopted. Maud v. Terrell, 109 Texas, 97, 200 S. W., 375; Staples v. State, 112 Texas, 61, 245 S. W., 639.

Under the rule announced in Maud v. Terrell, supra, and Staples v. State, supra, an act will not be held unconstitutional, as violative of the above named constitutional provisions, unless it, by plain and unambiguous language, deprives the county and district attorneys, and the Attorney General of their authority to represent the State in the suits prosecuted under such act.

There is nothing in the instant act to indicate any purpose or intention to curtail or abridge any right or duty conferred or imposed by the Constitution, the statute or the common law, upon county and district attorneys, and the Attorney General to represent the interest of the State in all such proceedings. Under the express holding of our Supreme Court in the two cases above cited, an act will not be condemned as violative of the constitutional provisions under discussion, unless it is susceptible of no other construction than that it unequivocally, and by clear language to be found in the act, plainly excludes the right and power of the officers named to represent the State. Under the statute here involved such officers not only have the power, but, under the laws and constitution of this State, it is their duty to appear in the case and represent the State.

In Maud v. Terrell, supra, the Supreme Court was called upon to determine the constitutionality of an act passed by the 35th Legislature, being Ch. 166, amending Art. 7491 of the 1911 codification. The purpose of the act as stated in the title is "* * * the Comptroller to appoint and contract with persons to collect inheritance taxes." It was attacked on account of the following provisions thereof as shown by the opinion:

"'The Comptroller of Public Accounts of the State of Texas is hereby authorized and empowered, and it is made his duty to appoint and contract with some suitable person or persons whose duty it shall be to look specially after, sue for and collect the taxes provided by this chapter; such person in no event

to receive under such contract more than ten (10) per cent of the amount of such taxes collected hereunder, as compensation.'

"Following this is the provision as to his reporting to the county judge estates subject to the tax. After the clause authorizing the payment of his compensation is this provision:

" 'It shall be the further duty of such person to aid in every possible way in the collection of such taxes.'

"At another place it is said:

" 'The person appointed by the said Comptroller may represent the State in any proceeding necessary under the provisions of this chapter to enforce the collection of such taxes but without other compensation than as provided in his original employment.' "

It was contended that the act was unconstitutional because it conferred upon the person appointed by the Comptroller the right to exercise a duty imposed by the Constitution on the county and district attorneys and Attorney General. The Supreme Court speaking through Judge Phillips, held the act valid and in this connection said:

"These provisions do not unequivocally supplant the county attorneys and the Attorney General in their authority to prosecute the suits of the State for the recovery of the taxes. These officers are not to be held as dispossessed of that authority by the Act unless by language to be found in the Act it is given to the Comptroller's appointee plainly to their exclusion. There is no language in the Act which certainly has that effect. The first provision quoted, with reference to its being the duty of the person employed by the Comptroller 'to look specially after, sue for and collect the taxes' may be said, literally, to empower such person to institute suits, but it does not exclude the idea that this shall be in subordination of the authority of the county attorney. There is nothing in the language indicative of an intention to confer upon such person an exclusive power. If not, it will be presumed that the Legislature intended he should act in that relation under the authority of the County Attorney and in such way as not to infringe upon the latter's powers, and the language will be so construed. It is not unreasonable to ascribe to the Legislature the view that the county attorneys of the State, with their important general-duties demanding efficient discharge, would not hesitate to avail themselves of the services of an assistant thus provided for the special purpose of enforcing the collection of these particular taxes, or to suppose it was upon such assumption that this duty was defined."

\* \* \* \*

"With this true, the Act cannot be pronounced invalid. For unless those officers are by the Act supplanted in this authority, it must be assumed that the Legislature intended they should be free to exert it as aforetime. If their authority was to be left unimpaired, it must further have been intended that the services of this assistant in this relation provided for by the Act should be in subordination to it and not in anywise interfere with its due exercise. The provisions referred to are, therefore, to be so construed."

In Staples v. State, supra, Sec. 9 of Ch. 88 of the 36th Legislature was attacked as violative of the same constitutional provisions here under discussion, and that were under discussion in Maud v. Terrell. The principal provisions of that act provided:

" 'If any candidate shall knowingly violate any of the provisions of this Act * * * he shall thereby forfeit his right to have his name placed upon the primary ballot * * * and proceedings by quo warranto to enforce the provisions of this section * * * may be instituted at the suit of any citizen in the district court or any county. * * *' "

The Court of Civil Appeals certified to the Supreme Court the question as to whether the above provision rendered the act violative of the above constitutional provisions.

In answering this question the Supreme Court, speaking through Judge Pierson, held that the act was not unconstitutional because the same should be construed to mean that the suit could be brought on relation of a citizen by the officers named in the Constitution.

■ By authority of the opinions above cited and quoted from, we hold that the Attorney General and the county and district attorneys of this State are not excluded from the suit, but that they all possess the rights and powers given them by the Constitution and laws of this State to appear in any suit instituted by authority of this statute, and represent the State, and in this connection we hold that such officers have the right to control the litigation for the State just the same as in any ordinary suit to which the State is a party.

■ As to the contention that the applicant to purchase and have surveyed vacant and unsurveyed public school lands of the State has no such justiciable right or interest in the land as will permit him to prosecute a suit such as this, we think that the rule is well settled in this State to the contrary. Thompson v. Locke, 66 Texas, 383, 1 S. W., 112; Tex-Mex Ry. Co. v. Locke, 63 Texas, 623; Maddox Bros. & Anderson v. Fenner et al., 79 Texas, 279, 15 S. W., 237.

Thompson v. Locke, supra, was a suit filed by Thompson to compel Locke, a surveyor, to survey certain lands which had been located by Thompson by virtue of certificates held by him. The petition alleged that the lands sought to be surveyed were claimed by a land company. Certain other allegations are shown to have been made not necessary to detail here. The prayer was for cancellation of the claims of the land company, and for mandamus to compel the surveyor to make the survey. The defendant, Locke, filed a plea of privilege, and the defendant land company filed a general demurrer. Both the plea of privilege and general demurrer were sustained by the district court. On appeal the Supreme Court held that the trial court was in error in sustaining both the plea of privilege and the general demurrer, and further determined that the applicant, though he had no legal title to the land, did have such an interest therein as to entitle him to maintain the suit against the surveyor to compel him to make the survey, and against the land company to determine whether its claim to the land was such as to show the land was not vacant. We think the opinion is absolute authority for the proposition that the applicant has an interest sufficient to authorize him to bring the suit, and that the judgment is binding on all persons. We here quote the following from the opinion:

"This case illustrates both the necessity and propriety of this rule. The surveyor declines to make the survey and return the field notes, not upon the ground that the evidences of right presented by the plaintiff are not sufficient to entitle him to have these things done, if the averments of his petition are true, but upon the ground that there is better right in another. The law refuses to the applicant the ordinary remedy to establish the superior right in a contest of title, while recognizing a right in him, if what he asserts is true, but in one respect inferior to that which, for remedial purposes, is equal to a legal title evidenced by patent. Before the surveyor can be compelled to act, it is essential that the superior right of the plaintiff be established, and this can be done only through some proceeding to which the adverse party is a party, and in which the question of title may be passed upon.

"Were an action of trespass to try title brought against the adverse claimant, on the evidences of right the plaintiff now has, it could not be sustained, because he has not a survey or surveys. If the plaintiff brings an action to remove cloud from his title, or to quiet it, by having an adjudication that the adverse claim has no validity, is he to be met with the defense

that he has not established a legal title or that he is not in possession, and therefore, not entitled to relief? If so, a right recognized by law may exist, and yet no remedy be allowed for its enforcement. The laws of this State are not subject to such a reproach.

\* \* \* \*

"The result of this action would be binding upon the plaintiff and the adverse claimant on the question of title. If decided in favor of the plaintiff, it would take from the surveyor all pretense of right longer to refuse to do what the plaintiff has requested; and, thereon the proper officers of the government would doubtless deem it their duty to issue patents to the plaintiff, after surveys were made and returned, unless some reason for not doing so, other than the adverse claim set up by the defendant corporation, was found to exist."

An examination of the opinion in the Thompson case, supra, discloses as above shown, that Thompson, the holder of certain land certificates had located them on certain land, claimed by him to be vacant, but which was claimed adversely by the land company. Thompson desired a survey of such lands in order that he might return the same to the Land Office and obtain a patent. The surveyor would not make the survey on account of the adverse claim of the land company. The position of the applicant in the instant case, who has gone to the expense of locating the vacancy here contended for, and written a letter of inquiry to the Commissioner, and now seeks the survey in order that he may comply with the other requirements of the statute and purchase the land are the same in law and in equity as the holder of the certificates in the Thompson case. It follows that the applicant in the instant case having done the things required by the statute is entitled to litigate his rights with the adverse claimants, and by virtue of the statute with the State. Of course, as above shown, the State has the right to be represented by the attorneys provided for it by law. On the final determination of the suit all matters in dispute will be properly adjudicated, and determined, and a final judgment binding as any other ordinary judgment made and entered.

Tex-Mex Ry. Co. v. Locke, supra, was also a suit to compel a survey and return field notes to the Land Office. The Supreme Court in the course of the opinion held that the applicant had the right to bring the suit, and that it was proper to make all adverse claimants parties, to the end that the court might determine the rights of all claimants. We quote the following from the opinion to show that the court recognized that the applicant

had such an interest in the land as to entitle him to litigate the issue of vacancy:

"Such a construction as that contended for by the appellees cannot be maintained either upon reason or by authority. If it is true, then there is no court in which appellant can secure an adjudication upon its rights. And that would render the declaration in the Bill of Rights, that 'all courts shall be open, and every person for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law,' the merest bombast. What profit is it to appellant that 'all courts are open,' if in none of these it can secure a remedy 'by due course of law?'"

We deem it advisable to here cite the following additional authorities which we think directly and in principle support the holding that an applicant to purchase public land who has written a letter provided for in this act has such an interest in the land as to give him the right to prosecute a suit to compel a survey to the end that he may comply with the requirements of the statute and acquire a patent. Board of Land Commissioners v. Bell, Dallam's Decisions, 366; Smith v. Power, 2 Texas, 68; Glasscock v. Land Commissioner, 3 Texas, 51; Cullem v. Latimer, 4 Texas, 329; Commissioner v. Smith, 5 Texas, 471; Watkins v. Kerchin, 10 Texas, 375; Winder v. Williams, 23 Texas, 601; Tex-Mex Ry. Co. v. Jarvis, 80 Texas, 456, 15 S. W., 1089.

In all cases brought by private parties against the Land Commissioner the relator shows a justiciable interest or right by complying with the law to such an extent as to entitle him to have the Commissioner perform a ministerial duty. When he has done this he has the right to maintain the action. We think the same rule applies here, and that the applicant to purchase has such a justiciable interest in the subject matter of the suit as to authorize the action against the county surveyor, and this regardless of what his rights would have been under the common law in the absence of a direct statute authorizing the act. The Supreme Court, however, has upheld and recognized the right to compel the performance of a ministerial act on the part of an officer in certain instances even in the absence of a statute.

Also we hold that under Art. 5323, the writer of a letter inquiry who has diligently pursued the requirements of the statute, and has followed the provisions thereof for the purpose of purchasing the land so far as he is able, has become vested with a right to purchase if the land is vacant, and further that

he has such a justiciable interest in the subject matter of the suit as to authorize him to maintain the same in order to enable him to complete his purchase.

■ Finally, we think the contention of the defendants in error that the act is unconstitutional because it confers upon the Land Commissioner power and authority to review a judgment of the district court should be overruled. It seems to be asserted in this regard that the part of the act which provides, "If upon inspection of the papers the Commissioner is satisfied from the report of the surveyor and the records of the Land Office, that the land belongs to the public free school fund," etc., attempts to confer upon the Land Commissioner the power to determine whether the vacancy exists, even after the courts have adjudicated that matter. We think that the act should not be given such a construction. When the suit has terminated by final judgment, it will be presumed that the judgment, and so much of the judgment roll as may be necessary to properly understand the same will become a part of the records of the Land Office. When this is done the Land Commissioner must act on the application to purchase in the light of the records of his office, including the judgment and judgment roll, and must give full faith and credit to the judgment. When no suit has transpired the Land Commissioner must determine whether a vacancy exists, and the Act is intended to confer upon him that power, but when a suit has been had the provision of the act which confers on the Land Commissioner the power to determine the vacancy does not apply, because it has already been determined by the Court. In other words the part of the act which confers on the Commissioner the power to determine the vacancy only has application where there has been no judicial determination of the question.

That our interpretation of the act is a correct one, is apparent when we consider the fact that in the first instance the Land Commissioner is allowed to exercise his discretion in determining whether a vacancy exists, and it would be unreasonable to hold that it contemplated he should still possess such discretion after a court of competent jurisdiction had adjudged otherwise. The basis for the suit provided for in Sec. 2 is the refusal of the Commissioner to recognize the existence of the vacancy. The evident purpose of the legal proceedings provided therein was to reach a decision where the Commissioner would have no further discretion in the matter, that is, by a judicial determination of the fact upon which the Commissioner had already acted. To give this statute any other construction would im-

pute to the Legislature the intention to pass a law, the operation of which would defeat the very purpose for which it was designed.

■ The contention that the act is violative of Sec. 19 of Art. I of our State Constitution, and of Sec. 1 of the 14th Amendment to the Federal Constitution, is based on the further contention that the judgment provided for by the statute is not binding on the State, and therefore under the act, an adverse claimant can be subjected to repeated suits until an adjudication against him can be obtained, and thus he is deprived of the equal protection of the law, and the protection of equal laws guaranteed him under the State and Federal constitutional provisions above mentioned. This contention is fully disposed of by our holding that the judgment is binding alike on all parties to the suit, including the State.

It is evident from what we have said that the entire act is constitutional and valid. This renders it necessary for us to consider the other material questions presented by the application for the writ.

■ As shown by the opinion of the Court of Civil Appeals some of the parties to this litigation contend that the State is a necessary party to this action, and that the State not having been made a party the cause must be reversed. We have already disposed of this contention. The State is a party in the way and manner above pointed out. This is true notwithstanding the fact that the Attorney General and county and district attorney did not actually appear to represent the State.

■ We shall now proceed to determine from the facts in evidence whether the land in litigation here constitutes a vacancy.

For the purposes of this opinion the following map will illustrate the issues involved and demonstrate our determination thereof:

The long narrow strip of land shown on the map between Blocks 24 and 25 on the north and Blocks 30 and 31 on the south is the land in litigation. Van Camp et al. contend that a vacancy exists as shown on this map. The opposition contends that the east and west lines of the southern tier of sections comprised in Blocks 24 and 25 connect with the north lines of

the north tier of sections comprised in Blocks 30 and 31. It seems that the location on the ground of the north line of Blocks 30 and 31 is not in controversy, and is easily ascertainable.

The opinion of the Court of Civil Appeals makes the following finding:

"Block 43 was first surveyed. The field notes of blocks 31 and 30 were filed in the General Land Office in 1885. The field notes of the various sections in blocks 25 and 24 are all dated December 8, 1900, signed by W. D. Twichell, state surveyor. The evidence discloses that Twichell's field notes were based upon surveying done for him by Robert E. Estes and that Estes only surveyed the north line of blocks 25 and 24, and marked corners at the northwest corners of those blocks. Estes at that time did not survey south of the north line of blocks 25 and 24. The distance calls of the east and west boundary lines of the southern tier of sections in said blocks are 1,969 varas and call for adjoinder with the north line of the northern tier of sections in blocks 31 and 30. No. 25 is the southeast section in Block 25. Its field notes are typical of the field notes of all the southern tier of sections in blocks 25 and 24. These field notes read:

" 'Beginning at S.E. corner Survey No. 24, this Block.

" 'Thence S. 74 deg. 40 min. W. 1900.8 varas to S.E. Corner Survey No. 23, this Block.

" 'Thence S. 15 deg. 20 min. E. 1969 varas to point in north line Survey No. 2, Univ. Blk. No. 31.

" 'Thence N. 74 deg. 40 min. E. 1900.8 varas to S.W. corner Survey No. 12, Blk. B. 24.

" 'Thence N. 15 deg. 20 min. W. 1969 varas to the place of beginning.'

"The theory upon which appellee Camp contends that there is a vacancy between blocks 25 and 24 upon the north, and University blocks 31 and 30 on the south, is that by running course and distance from the two corners in the north line of blocks 25 and 24 as established and marked by Estes in 1900, the south line of said blocks is established about 175.2 varas north of the University blocks. The point presented is whether the distance calls of 1,969 varas as the length of the east and west boundary lines of the southern tier of sections in blocks 25 and 24 shall prevail over the calls for connection with the north line of the northern tier of sections in University blocks 31 and 30."

The above finding is well supported by the record both as a matter of fact and as a matter of law.

As shown by the opinion of the Court of Civil Appeals, the vacancy contended for by Van Camp is described as follows:

"Bounded on the South by the North lines of Blocks Nos. 30 and 31, University Lands, the same being the North lines of Surveys 1 to 6, inclusive, in said Block 30 and the North lines of Surveys 1 to 6, inclusive, in said Block 31; bounded on the West by a line which is a projection northwesterly of the West line of said Block 31, University Land, to an intersection with the South line of Survey 30, Block B-25, Public School Land; and bounded on the North by the South lines of Surveys 25,26, 27,28,29 and 30, Block B-25, Public School Land, and the South lines of Surveys 9,10,11 and 12, Block B-24, Public School Land, and the South lines of Surveys 35 and 36, Block 43, Township 4 South, Texas & Pacific Railway Surveys; and on the East by the West line of said Survey 35, Block 43, containing 420.2 acres of land."

From the above it is seen that the vacancy here contended for consists of a narrow strip of land about 10 miles long and about 175.2 varas wide between Blocks 24 and 25 on the north and University Blocks 30 and 31 on the south.

The record before us shows that Block 43, which is shown on the map above, was first surveyed. Blocks 30 and 31, University lands, were next surveyed, and the field notes thereof returned in the Land Office in 1885. Blocks 24 and 25 on the north were last surveyed and the field notes of the various sections thereof filed in the Land Office in December, 1900.

It appears from the above and from the record that:

1. The surveyor made no actual survey of any of the East and West lines of the several sections comprised in Blocks 24 and 25, but obtained the North and South distances called for therein by projection.

2. The surveyor was mistaken as to the exact distance that it would take to reach the North lines of said blocks, but such mistake was not occasioned by such lines being uncertain.

3. The surveyor expresses an intention to connect with the North lines of Blocks 30 and 31 and nothing appears to contradict this intention except the mere fact that the call for distance is insufficient to reach such lines.

Under the above facts we think that as a matter of law there is no vacancy between Blocks 24 and 25 on the North and Blocks 30 and 31 on the South. In other words we think under such facts the rule is settled in this state that the calls for adjoinder must prevail over the calls for distance. Welder v. Hunt, 34 Texas, 44, 47; Buford v. Gray, 51 Texas, 331; Free-

man v. Mahoney, 57 Texas, 621; Lilly v. Blum, 70 Texas, 704.

The judgment of the Court of Civil Appeals should be affirmed.

The foregoing opinion is adopted as the opinion of the Supreme Court and judgment will be entered in accordance therewith.

C. M. CURETON, Chief Justice.