## CITIES SERVICE OIL CO. v. DUNLAP et al.*

### No. 8863.

Circuit Court of Appeals, Fifth Circuit.

Dec. 8, 1938.

*Rehearing denied 101 F.2d 314.

Clayton L. Orn and David B. Trammell, both of Fort Worth, Tex., for appellant.

William A. Wade and Angus G. Wynne, both of Longview, Tex., and Cecil N. Cook, of Houston, Tex., for appellees.

Before SIBLEY, HOLMES, and McCORD, Circuit Judges.

SIBLEY, Circuit Judge.

The appellant, Cities Service Company, is by assignment and succession the holder of a producing oil and gas lease on a tract of land in Gregg County, Texas, made in 1930 by the heirs of J. F. Rogers. In 1934 appellee B. P. Dunlap obtained a lease upon a narrow strip of land about 68 feet wide by 880 yards long along the west side of the J. F. Rogers tract (less two acres sold off at the northwest corner) from the heirs of J. F. Rogers and his three brothers, W. H. Rogers, F. E. Rogers and J. W. Rogers. The four Rogers brothers were the heirs of Louisa Rogers, who owned a rectangular tract of about 320 acres. They in February, 1899, divided it by assigning to J. F. Rogers a tract in the northwest corner, to W. H. Rogers a tract in the northeast corner, while F. E. Rogers and J. W. Rogers together took the south portion. The lease made in 1934 to Dunlap rests on the theory that a strip of land 66 or 68 feet wide along the west side was left undivided in 1899.

The lease of 1934 was recorded, and appellant as the holder of the lease of 1930, claiming the strip to be within its lease, filed in the District Court a bill to remove the cloud on its title, making Dunlap and all the Rogers parties. The defendants denied the material allegations of the bill touching the west boundary of the J. F. Rogers land, and by cross-bill set up that a call in the deed to J. F. Rogers for the "Wiley Davis northeast corner" as the northwest corner of the J. F. Rogers tract was inserted by the draftsman through inadvertence and mistake, and that the course and distance in the deed were correct and located that corner about 66 feet east of the Wiley Davis corner, and that the strip thus left between the east side of the Davis land and the west side of the J. F. Rogers land was purposely left undivided to be controlled in common; and there was a prayer to quiet title in them and their lessee. In answer to the cross-bill the complainant denied these allegations and asserted that it and its predecessors in the lease were pur-

chasers for value in good faith and without notice of the mistake in the J. F. Rogers deed. On full findings of fact the District Court held that the extrinsic evidence of what happened in the partition, and of the intention in locating the west line of the J. F. Rogers land, was admissible; that the strip in question was not a part of the tract set off to J. F. Rogers, but that his west line began at a point 880 yards west of the northeast corner of the original tract and went thence south to a "gear shaft" corner, and that the reference to Wiley Davis' corner was inserted in the deed by mistake. The title was accordingly quieted in the defendants. There was no express finding as to whether the complainant or its predecessors, or any of them, was a bona fide purchaser for value without notice. This appeal followed.

The principal questions made are: That the parol extrinsic evidence was not admissible; that the call for the Davis corner overrules the course and distance which fell short of it; that if that call be ignored the tract was nevertheless one adjoining a road, and by legal construction would include the land under the road; that the mistake, if any, was not correctible against bona fide purchasers; and that if all these contentions fail, still the one-fourth interest of the J. F. Rogers heirs in the strip should be held affected by appellant's lease. Appellant has a second lease made after a resurvey, and containing a differently worded description, but it was executed on the assurance that it covered nothing that was not covered by the first lease, and we agree with the ruling made below that it ought to be given no different effect.

■ The first lease copied exactly the calls of the partition deed to J. F. Rogers, as follows: "Being a part of the G. A. Thomas HR; starting at the N. E. corner of Lot No. 2, which is the N. W. corner of W. H. Rogers' tract, Lot No. 1, running west 440 yards to Wiley Davis' N. E. corner; thence south 880 yards; thence east 224 yards; thence north 310 yards at 12° east of north; thence east 754 yards; to W. H. Rogers' line; thence north 574 yards to the starting point; containing 68-⅛ acres more or less." On its face this survey is out of balance. The total west measurement is 440 yards. The east measurements are 224 and 574 yards, a total of 798 yards beside the easterly gain in the line which runs 310 yards 12° east of north. All agree that the partition deeds, which are of the same date

and between the same parties, recite the same consideration, and each in form a warranty deed to the grantee from the other tenants in common and duly recorded, are to be construed together as one transaction. Comparing them, it appears that the east and west line set down in the deed to J. F. Rogers as 754 yards long continues as a part of the south boundary of Lot No. 1 for 66 yards further. This entire line appears in the deed to the F. E. and J. W. Rogers part as 220 yards long, showing that 754 is a clerical error for 154, because 154 plus 66 makes 220 yards. Thus corrected, the J. F. Rogers east and west measurements approximately balance. They also work out correctly on the land. The northeast corner of the original tract is known, and is the northeast corner of Lot No. 1. The northwest corner of Lot No. 1 is by the deed to W. H. Rogers fixed 440 yards to the west, and was in 1930 a marked corner. That is the northeast corner of Lot No. 2, the J. F. Rogers tract, and the beginning and ending point for the calls in the deed to him. The northwest corner (ignoring the Wiley Davis corner) is called for as 440 yards to the west. Thence the course is south 880 chains, the deed mentioning no marker there but there being at this point a heavy iron shaft with a beveled gear on it planted, as is testified, soon after the survey to mark the corner, and it has been reputed to be the corner ever since. The courses and distances following thence, after the correction of 754 to 154 yards, reach the west line of Lot No. 2 and proceed along it to the beginning with fair accuracy. On the other hand, if the north line of Lot No. 2 is not stopped at 440 yards but is continued about 66 feet to Wiley Davis' N. E. corner, which was a known point in 1899 and ever since, and if the survey is continued thence, the beveled gear shaft will be missed at the southwest corner by 66 feet, the west lines of Lot No. 1 will not be reached by that distance, nor will the beginning point be.

■ In the effort to include just the land the parties intended, which is the true object in all questions of boundary, shall the measurement of 440 yards for the north line prevail, or shall the call for Wiley Davis' northeast corner control? The appellant correctly contends that there is a presumption that the parties intended to divide all their land and especially not to leave a narrow strip off to one side; and that it is a general rule that courses and

distances, because of the greater possibility of error in them, will yield to a call for a fixed monument, including the line or corner of an adjoiner. Camp v. Gulf Production Co., 122 Tex. 383, 61 S.W.2d 773; Goodson v. Fitzgerald, Tex.Civ.App., 135 S.W. 696; 8 Am.Jur., Boundaries, § 51, 53, 56. But the presumption stated is rebuttable; and the rule not without exceptions. It sometimes appears that the measurements are more likely correct than the call for some monument or adjoiner, or that such call was inserted by error; and when that is clearly true the mistaken call will be rejected and the measurements followed even in cases at law. White v. Luning, 93 U.S. 514, 23 L.Ed. 938; State v. Sullivan, 127 Tex. 525, 92 S.W.2d 228; Wilson v. Giraud, 111 Tex. 253, 231 S.W. 1074; Coswell v. Foulk, Tex.Civ.App., 97 S.W.2d 341, error refused; Humble Oil Co. v. State, Tex.Civ.App., 104 S.W.2d 174, error refused; 8 Am.Jur., Boundaries, § 52. In the present case the scope of the admissible evidence is enlarged by the pleaded issue that the reference to the Wiley Davis corner got into the deed through mistake. On that issue, the case being in equity, parol and other extrinsic evidence of what was done and said was plainly admissible. The court properly heard the testimony of persons who were present at the survey, and it clearly showed that the northwest corner of Lot No. 2 was deliberately and purposely put about a chain's length east of the Wiley Davis corner so as to leave a strip undivided and under the control of all four tenants in common for the purpose of a road. The planting of the heavy gear shaft at the same distance from the Davis line at the south end powerfully sustains this testimony. Most evidently it marked a permanent corner. The evidence was admissible, and it well warranted the finding of the judge that the reference to the Wiley Davis corner as the corner of Lot No. 2 was inserted by mistake in drafting the deed. Appellant argues that the field notes of the survey contradict the witnesses as to where the surveyor went and how he located the corners of Lot No. 2. It so happens that the field notes of Lot No. 2 have not been found. Those for the other lots do not show the surveyor at or near the Wiley Davis corner, or measuring the north line 440 yards or any other length, for this line was not common to the other lots. Only the field notes for Lot No. 2 would show what was done at or near the northwest corner of that lot. There is no contradiction of the witnesses by the field notes introduced.

■ But appellant argues that equity will not correct a mistake as against a bona fide purchaser for value without notice, and that there is no proof that it and its predecessors in the lease were not such. The answer is that there is no sufficient proof that they were. In the law of negotiable instruments presumptions are indulged as to bona fides and want of notice, but in equity a claim to the favored position of a bona fide purchaser for value without notice is a matter of affirmative defense, and he who asserts it has the burden of proving it. Compare United States v. California & Oregon Land Co., 148 U.S. 31, 13 S.Ct. 458, 37 L.Ed. 354. It fairly appears that these lessees paid value in developing the lease, but there is no evidence at all that at the time they paid they did not know that the west line was not the east line of Davis, or that the call for 440 yards on the north line would not reach Davis' corner, rendering the corner questionable. No well was drilled or expenditures made on this disputed strip. There being no proof of bona fides or want of notice, this plea was not sustained. The district judge held the evidence touching the intention of the parties to be admissible on the ground that the deed was ambiguous irrespective of the equitable power to correct a mistake in the deed. The cases cited above go far to sustain him, but we find it unnecessary to determine that question in view of the equitable issues pleaded.

■ Appellant strongly argues that although it be established that the call for the Wiley Davis corner does not belong in the deed, under settled rules of law the conveying of the land adjoining a road will carry the grantor's title to the servient fee up to the center of the road, and if the grantor has no land beyond the road the grantor's title to its further edge will pass. Such is the general rule applied both to highways and streets and alleys, non-navigable streams and railroad rights-of-way. 8 Am. Jur., Boundaries, § 36, 39, 22, 25; 11 C.J.S., Boundaries, § 31, 35, 45. It is based on the presumed intention of the parties that the grantor would not reserve a long, narrow strip under such way or stream for which he had no use, and partly on public policy in that such strips are likely to give rise to litigation in the distant future. But it is not unlawful to retain such a strip. If the intention to do so is clear, the contrary pre-

sumption must yield. And if the conveyance as made does not reach the highway or stream, it cannot be extended to it to avoid creating a separately owned strip. There was in 1899 no highway or street or alley covering the strip in question. A highway ran east and west through the land to be partitioned near its center. The Rogers brothers had run a sawmill on their land, and had hauled logs along the line of Davis to this highway. It was not a publicly worked way, or an established road. About this time, the date not being clearly fixed, Davis wished to confine the travel across his place, and he testifies he gave fifteen feet along the east edge of his land for a north and south road. Several witnesses say they helped cut the road out fifteen or twenty feet wide, cutting the line trees on the Davis line because they were in the road. The big pine at the Wiley Davis northeast corner was cut close to the ground and its stump was in the middle of the road. It was thereafter a country road open to all, although little used. The fences, where there were any, on either side were sixty or seventy feet apart, but not straight, and probably were not regarded as correct line fences. The land, as we understand, was mostly in woods. The actual road was thus only twenty feet wide, and supposed to be half on the land of Davis. Assuming it to have been in existence in 1899, the northwest and southwest corners which the surveyor fixed for Lot No. 2 were about sixty-six feet from the center of this road and fifty-six feet from its margin. Neither the deed nor the field notes say anything about a road. This is not a case in which a road is mentioned as a boundary, nor one in which the boundary fixed is in fact the edge of a road either public or private. The only thing that tends to make the strip in contest a road, or the equivalent of a road, is the parol evidence that the Rogers brothers during the survey informed the surveyor, as found by the court, that "They would leave the 66 feet out of the partition and use the same jointly, and keep it like it was; the same 66 foot tract was then being used in part as a logging road." There was no covenant to dedicate the strip to the public as a road. It was subjected to no easement over the whole of it so as to convert the whole strip into a roadway. There is a plainly expressed intention not to add the strip to Lot No. 2 but to retain joint control and ownership of it. Since the deed as prepared said nothing about a road as a boundary, there was no occasion to make a reservation of the land, though to some extent on its far edge it was used for a road. The case presented is not one requiring an extension of the deed beyond its true calls. In recent years a broad public road occupying most of the strip has been laid out, but this development years after the making of the deed cannot have the effect of extending its scope. 11 C.J.S., Boundaries, § 35(4).

Appellant lastly contends that its lessors at the date of its lease owned in any event a fourth interest in the strip, and it is covered by the lease because of the words in it which follow the description first above quoted: "and being the same land described in a deed from J. W. Rogers, W. H. Rogers and F. E. Rogers, February 28, 1899, Recorded Vol. R, pages 59–60, Deed Records Gregg County, Texas, save and except two acres out of the northwest corner sold to R. M. Wood, it being the intention to include all land owned or claimed by lessor in said surveys." In the correctional lease the singular number is used: "Said survey". The only survey definitely mentioned consists of the courses and distances just before recited. The reference to the recorded deed to J. F. Rogers imports its contents into the lease, and there is a similar "survey" in it. The "intention clause" if applied to these adds nothing to the lease. It is, however, attempted to make it refer to the original grant to G. A. Thompson (Thomas is the name used in the lease) which contained 640 acres, but the lease does not mention any survey in that connection. The uncertainty is too great to warrant any application of this clause to land outside the limits of the surveys which are definitely set forth. Furthermore, if other land can be included under this clause the original lessee's interest in it was not transferred to the appellant, for his deed of assignment recites the description of the J. F. Rogers deed as above quoted, omitting the "intention clause", and then transfers "all rights, title and interest of the original lessee and present owner in and to said lease and rights thereunder in so far as it covers the above described tract." If the lease covered any additional land, the original lessee did not transfer his interest therein.

Judgment affirmed.